## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| | § | |
| Old LC, Inc. (f/k/a Loot Crate, Inc.), *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adv. No. 22-~~50107~~ (BLS) |
| | § | |
| The Loot Company (f/k/a Loot Crate | § | |
| Acquisition LLC) and John Doe, | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF ANDREW SCHOULDER IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 7065 AND 11 U.S.C. §105**

I, Andrew Schoulder, hereby declare pursuant to 28 U.S.C. § 1746, that the following statements are true and correct, to the best of my knowledge and belief after due inquiry described herein.

1.     I am a partner with Bryan Cave Leighton Paisner LLP ("***BCLP***"), an international law firm with approximately 1,400 lawyers in thirty-four offices domestically and abroad, including an office in New York located at 1290 Avenue of the Americas, New York, NY 10104-3300.  I am an attorney, duly admitted and in good standing to practice in the State of New York.

---

[1]     Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

2.      This declaration is being filed in support of the *Plaintiffs' Motion for Preliminary Injunctive Relief Pursuant to Federal Rule of Bankruptcy Procedure 7065 and 11 U.S.C. § 105* (the "**Motion**"). [2]   I am over the age of eighteen, and have personal knowledge of the facts in this matter, and if called upon to testify, could and would do so.

3.      On November 18, 2021, Debtors received a notice of default from the Attorney General's Office for the State of Texas.  Specifically, the notice of default explained that the Comptroller had not received a tax payment pursuant to the Payment Plan (as such term is defined in the Sales Tax Funding Commitment) for the state of Texas since on or about August 9, 2021 (the "***Texas Default***").  Attached hereto as **Exhibit A** is a true and correct copy of the Texas Default, which includes the applicable Payment Plan for the state of Texas.

4.      Prior to receiving the Texas Default, Purchaser had not provided to Debtors' professionals any previous notice of such breach.

5.      Upon receipt of the Texas Default communication, Debtors' counsel, BCLP immediately contacted counsel for Purchaser at Cooley LLP ("***Cooley***"), Cathy Hershcopf and Lauren Reichardt, requesting that Purchaser immediately look into and cure the default. Additionally, Debtors' counsel requested that Purchaser also confirm that Purchaser is compliant with the Payment Plans for other states.  Attached hereto as **Exhibit B** is a true and correct copy of this correspondence.

6.      Cooley confirmed receipt of BCLP's request that same day, on November 18, 2021. *See* **Exhibit B**.

---

[2]      Any capitalized terms used but not described herein shall have the meanings ascribed to such terms in the Motion.

7.      On November 23, 2021, BCLP emailed Cooley again to confirm whether Cooley or Purchaser was in communication with the Office of the Attorney General for the State of Texas to address the Texas Default.  *See* **Exhibit B**.

8.      In response, Cooley stated "We have contacted our client, but have no intention of talking directly to TX."  *See* **Exhibit B**.

9.      Following this response, BCLP emailed Cooley again for clarification on November 23, 2021, as follows, "Cooley has not [sic] intention and [Purchaser] has no intention? OR Cooley has no intention? Has someone paid the bill? We can't ignore the Texas in light of the default – SOMEONE needs to tell them something. So at minimum, we need to know what is being done to cure." *See* **Exhibit B**.

10.     In response, Cooley indicated, "Lauren promptly contacted the client about the delayed payment. I will reach out personally to Joel [Weinshanker] before the holiday, but not until my deposition is over.  Neither Cooley, nor [Purchaser] will contact Texas." *See* **Exhibit B**.

11.     On November 30, 2021, after receiving an inquiry from the State of Texas, BCLP again contacted Cooley on the status of their inquiry and were told, "I reached out to Joel [Weinshanker] again."   A true and correct copy of this correspondence is attached hereto as **Exhibit C**.

12.     After still not receiving an update from Cooley or Purchaser, BCLP again contacted Cooley, on December 2, 2021, for an update, stating:

> Hi Cathy and Lauren – any update?
>
> Chris Murphy from the Texas Comptroller called me this afternoon to see where things stand. He indicated that he is not looking to accelerate and unwind the settlement, but his discretion is going to slowly slip way unless things are resolved and brought back into compliance.

> I understand that you don't want Cooley and [Purchaser] directly interfacing
> with Texas, that's okay. I'm happy to do it. But in making me the middle
> man, I just ask that you help me out here so I'm not in a very awkward and
> compromising position. Hope you can appreciate that.

A true and correct copy of this correspondence is attached hereto as **Exhibit D**.

13.    In response, that same day on December 2, 2021, Cathy Hershcopf again responded, stating "I pinged Joel [Weinshanker] again and Lauren reached out to [Purchaser]." *See* **Exhibit D**.

14.    During this period, in addition to the repeated requests for Cooley to provide an update on the status of the Texas Default, BCLP also requested confirmation as to whether or not Purchaser was in compliance with the other Payment Plans.  *See* **Exhibits C & E**.

15.    On December 10, 2021, BCLP asked Cooley for an update on the status of the Purchaser's review. In this communication, BCLP reemphasized that this information was being conveyed to the State of Texas in order to keep the Attorney General's Office apprised of the situation, stating, "Cathy/Lauren – I was able to preempt Texas from asking for a status update by reporting that you were meeting with [Purchaser]. Do you have an update? I rather not get on the phone with Texas next week until I have something substantive to him. Thanks." A true and correct copy of this correspondence is attached hereto as **Exhibit E**.

16.    On December 10, 2021, Lauren Reichardt at Cooley responded "Long story short is that there has been a lot of turnover at the company over the past months.  Ruby is no longer there and I don't think everything got communicated that should have before she left.  They are working to become current and I will follow up next week as well" (the "***December 10th Communication***").  *See* **Exhibit E**.

17.    In reliance on the December 10th Communication, BCLP explained via electronic mail to the Attorney General's Office for the State of Texas on December 14, 2021, and subsequent

calls, that the person who had the institutional knowledge and was responsible for making the Payment Plan payments at the Purchaser was no longer with the Purchaser, which is why payments came to a halt and no one identified the issue. A true and correct copy of this correspondence is attached hereto as **Exhibit F**. BCLP also explained in the calls with the Attorney General's Office that the Purchaser had stated that it was working to get back into compliance with the Texas payment plan.

18.    Based upon information provided by Cooley on January 14, 2022 at 3:30 pm and January 18, 2022 at 3:30 pm (both EST), Debtors understand that Purchaser owed approximately $2.6 million under the Payment Plans of which approximately $800,000 in payments was delinquent.

19.    On January 19, 2022, Debtors and their Boards of Directors (the "***Board***") sent a letter to Purchaser demanding that Purchaser cure all breaches under each of the Payment Plans and maintain compliance with such obligations while Debtors and Purchaser discuss a path forward in good faith (the "***Notice of Defaults***").  A true and correct copy of this correspondence is attached hereto as **Exhibit G**.

20.    The Notices of Default also cautioned parties against engaging in any wrongful conduct, as follows:

> Moreover, anyone taking part in any diversion or distribution of assets from Purchaser to any affiliates of Mr. Weinshanker or NECA should be on notice that they may be personally liable for aiding and abetting fraud, fraudulent conveyances, or other causes of action available to creditors of an entity that is having its assets diminished or "wound down" for the benefit of insiders, as Mr. Weinshanker indicated is occurring.

(the "***Fraud Notice***").

21.    On January 24, 2022, at Cooley's request, professionals from Cooley and BCLP participated in an "off the record" videoconference.

22.     After hiding the breaches for months and providing false information that Cooley knew BCLP was using to update the State of Texas with, on January 25, 2022, Purchaser attempted to manufacture a fictitious termination of the Sales Tax Funding Commitment as of January 19, 2022.  By letter from Cooley (the "***Erroneous Termination Letter***"), Cooley asserted that the Fraud Notice constituted a termination event under Section 3(b)(ii) of the Sales Tax Funding Commitment, which provides:

> The Agreement shall terminate, automatically and without any need for any action by any Person upon the earliest to occur of the following: . . . (b) the date that any Seller Entity or any of their Representatives . . . (ii) asserts, or threatens to assert, any claim against any Non-Recourse Party (as defined below) in connection with this Agreement [the Sales Tax Funding Commitment], the Purchase Agreement, or any of the transactions contemplated by this Agreement or the Purchase Agreement . . .

The Erroneous Termination Letter has been redacted to remove certain information that was shared as part of settlement discussions during the January 24, 2022 videoconference.  A true and correct copy of this correspondence is attached hereto as **Exhibit H**.

23.     Following the receipt of the Erroneous Termination Letter, BCLP quickly notified Cooley and Purchaser by responsive letter, dated January 25, 2022 that (i) the termination was not effective as Section 3 of the Sales Tax Funding Commitment did not shield Weinshanker or his affiliates from liability for fraud or fraudulent conveyances but only claims "in connection this Agreement [Sales Tax Funding Commitment], the Purchase Agreement, of any of the transactions contemplated by this Agreement or the Purchase Agreement; (ii) the Fraud Notice did not assert a claim against any party; (iii) to the extent that the Fraud Notice could have been interpreted as asserting or threatening a claim, it certainly did not assert or threaten a claim in connection with the Sales Tax Funding Commitment or the Purchase Agreement unless Purchaser and Cooley believe that such agreements contemplated fraud and fraudulent conveyances, and (iv) even if the

Erroneous Termination Letter was effective, such termination did not relieve Purchaser from the obligation to cure the breaches of, at least $800,000 (plus fees and expenses) for defaults arising prior to January 19, 2022. A true and correct copy of this correspondence is attached hereto as **<u>Exhibit I</u>**.

I declare under penalty of perjury of the laws of the United States that the foregoing is true

and correct.

Dated: February 1, 2022
Mount Vernon, New York

Andrew Schoulder

# Exhibit A

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Thursday, November 18, 2021 10:37 AM
**To:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Cc:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com) <bsusmano@withum.com>
**Subject:** RE: Loot Crate - FRE 408 Communication

Good afternoon everyone,

I hope you are doing well. I am writing to give a notice of default on behalf of the Comptroller as I just received a note that LCA hasn't made a settlement payment since 8/9/21. Could you please pass along to LCA and ask whether they intend to cure? I am attaching the amortization schedule with payments reflected for reference. Please let me know your thoughts.

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

# Exhibit B

| | |
|---|---|
| **From:** | Schoulder, Andrew |
| **Sent:** | Tuesday, November 30, 2021 9:36 AM |
| **To:** | 'Hershcopf, Cathy' |
| **Cc:** | Duedall, Mark; Bonnie Susmano (bsusmano@withum.com); Fiorenza McNeill, Leah; Reichardt, Lauren A |
| **Subject:** | RE: URGENT - Loot Crate - FRE 408 Communication |

Any update on whether this has been cured?  Would it be possible to have LCA review its records to confirm that all other payments have been made?  I can check, but I'm pretty sure that there was supposed to be a reporting obligation under the agreement.  But, I'm not looking anything formal – just a gut check to confirm we won't have any other notices delivered at our door step.



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Hershcopf, Cathy <chershcopf@cooley.com>
**Sent:** Tuesday, November 23, 2021 11:11 AM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com) <bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>; Reichardt, Lauren A <lreichardt@cooley.com>
**Subject:** RE: URGENT - Loot Crate - FRE 408 Communication

Lauren promptly contacted the client about the delayed payment. I will reach out personally to Joel before the holiday, but not until my deposition is over.

Neither Cooley, nor LCA will contact Texas.

**Cathy Hershcopf**
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Direct: (212) 479-6138
Mobile: (646) 483-5534
Practice | Bio | Blog | Twitter | LinkedIn

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Tuesday, November 23, 2021 11:06 AM
**To:** Hershcopf, Cathy <chershcopf@cooley.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com) <bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>; Reichardt, Lauren A

1

<lreichardt@cooley.com>
**Subject:** RE: URGENT - Loot Crate - FRE 408 Communication

[External]

Cooley has not intention and LCA has no intention?  OR Cooley has no intention?

Has someone paid the bill?  We can't ignore the Texas in light of the default – SOMEONE needs to tell them something.  So at minimum, we need to know what is being done to cure.



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Hershcopf, Cathy <chershcopf@cooley.com>
**Sent:** Tuesday, November 23, 2021 11:03 AM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com)
<bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>; Reichardt, Lauren A
<lreichardt@cooley.com>
**Subject:** RE: URGENT - Loot Crate - FRE 408 Communication

We contacted our client, but have no intention of talking directly to TX.

Lauren and I are both in depositions today.

**Cathy Hershcopf**
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Direct: (212) 479-6138
Mobile: (646) 483-5534
Practice | Bio | Blog | Twitter | LinkedIn

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Tuesday, November 23, 2021 11:01 AM
**To:** Reichardt, Lauren A <lreichardt@cooley.com>; Hershcopf, Cathy <chershcopf@cooley.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com)
<bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** RE: URGENT - Loot Crate - FRE 408 Communication

[External]

Lauren - Can you confirm whether someone is in touch with Texas to address?



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Reichardt, Lauren A <lreichardt@cooley.com>
**Sent:** Thursday, November 18, 2021 11:12 AM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Hershcopf, Cathy <chershcopf@cooley.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com)
<bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** RE: URGENT - Loot Crate - FRE 408 Communication

Andrew, I will follow up.  Thank you.

Lauren A. Reichardt
Cooley LLP
office: +1 212 479 6515
mobile: +1 516 582 1635
lreichardt@cooley.com

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Thursday, November 18, 2021 11:10 AM
**To:** Hershcopf, Cathy <chershcopf@cooley.com>; Reichardt, Lauren A <lreichardt@cooley.com>
**Cc:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie
Susmano (bsusmano@withum.com) <bsusmano@withum.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** URGENT - Loot Crate - FRE 408 Communication
**Importance:** High

[External]

Cathy / Lauren,

See below from Texas.  It appears that LCA has been defaulting on its payment obligations to Texas.  Can you please
urgently get someone on LCA to focus on this?

Given the materiality of Texas, I think it makes sense for LCA to confirm that they have been keeping up with the other
state payments.  Can you assist with that?

Regards,
Andrew



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Thursday, November 18, 2021 10:37 AM
**To:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Cc:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie
Susmano (bsusmano@withum.com) <bsusmano@withum.com>
**Subject:** RE: Loot Crate - FRE 408 Communication

Good afternoon everyone,

I hope you are doing well. I am writing to give a notice of default on behalf of the Comptroller as I just received a note
that LCA hasn't made a settlement payment since 8/9/21. Could you please pass along to LCA and ask whether they
intend to cure? I am attaching the amortization schedule with payments reflected for reference. Please let me know
your thoughts.

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

# Exhibit C

| | |
|---|---|
| **From:** | Hershcopf, Cathy <chershcopf@cooley.com> |
| **Sent:** | Tuesday, November 30, 2021 1:30 PM |
| **To:** | Schoulder, Andrew |
| **Cc:** | Reichardt, Lauren A |
| **Subject:** | RE: Loot Crate - FRE 408 Communication |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

I reached out to Joel again.

**Cathy Hershcopf**
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Direct: (212) 479-6138
Mobile: (646) 483-5534
Practice | Bio | Blog | Twitter | LinkedIn


**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Tuesday, November 30, 2021 12:48 PM
**To:** Hershcopf, Cathy <chershcopf@cooley.com>; Reichardt, Lauren A <lreichardt@cooley.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** FW: Loot Crate - FRE 408 Communication

**[External]**

FYI – Texas followed about an hour ago (after I sent you my note this morning).



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
**T: +1 212 541 1192  M: +1 646 982 5330**

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Tuesday, November 30, 2021 12:05 PM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com)

<bsusmano@withum.com>
**Subject:** RE: Loot Crate - FRE 408 Communication

Good morning everyone,

Thanks again for your attention to getting this resolved and I hope you all had a relaxing Thanksgiving holiday. As of today, I don't show that our office has received any cure payments and I haven't heard anything from LCA or its counse. Of course, I could be missing something if they attempted to cure by making payment directly to the Comptroller instead of our office. I would like to avoid a notice of acceleration as the settlement agreement provides for a 5 day cure period following notice of default. Could you please provide payment confirmation details from LCA? I'm happy to work with them directly if that makes more sense and you could point me to the appropriate person to speak with?

Thanks again,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Tuesday, November 23, 2021 10:29 AM
**To:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Cc:** Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com)
<bsusmano@withum.com>
**Subject:** Re: Loot Crate - FRE 408 Communication

Christopher - just as a follow up, we have spoken with LCA's counsel and they are working with the company to make sure the issue is cured.

Please let us know if you have any questions.

Regards,
Andrew

Sent from my iPhone

> On Nov 18, 2021, at 11:08 AM, Schoulder, Andrew <Andrew.Schoulder@bclplaw.com> wrote:
>
> Hi Christopher,
>
> I will make sure their counsel is aware of this immediately, and put them in touch with you to make sure it's cured asap.

Please let us know if you haven't heard back from them.



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Thursday, November 18, 2021 10:37 AM
**To:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Cc:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Duedall, Mark <mark.duedall@bclplaw.com>; Bonnie Susmano (bsusmano@withum.com) <bsusmano@withum.com>
**Subject:** RE: Loot Crate - FRE 408 Communication

Good afternoon everyone,

I hope you are doing well. I am writing to give a notice of default on behalf of the Comptroller as I just received a note that LCA hasn't made a settlement payment since 8/9/21. Could you please pass along to LCA and ask whether they intend to cure? I am attaching the amortization schedule with payments reflected for reference. Please let me know your thoughts.

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

# Exhibit D

| From: | Hershcopf, Cathy <chershcopf@cooley.com> |
| --- | --- |
| Sent: | Thursday, December 2, 2021 2:06 PM |
| To: | Schoulder, Andrew |
| Cc: | Reichardt, Lauren A; Fiorenza McNeill, Leah; Bow, Timothy |
| Subject: | Re: Loot Crate - Texas Comptroller Follow Up |
| Attachments: | image001.png; Loot Crate - Texas Settlement Agreement (fully executed).pdf; Loot Crate - FRE 408 - Ammortization Schedule.docx |

I pinged Joel again and Lauren reached out to LCA.

**Cathy Hershcopf**
Cooley LLP
<u>55 Hudson Yards</u>
<u>New York, NY 10001-2157</u>
Direct: <u>(212) 479-6138</u>
Cell: 646-483-5534
<u>Practice</u> | <u>Bio</u> | <u>Blog</u> | <u>Twitter</u> | <u>LinkedIn</u>

On Dec 2, 2021, at 2:01 PM, Schoulder, Andrew <Andrew.Schoulder@bclplaw.com> wrote:

[External]

Hi Cathy and Lauren – any update?

Chris Murphy from the Texas Comptroller called me this afternoon to see where things stand. He indicated that he is not looking to accelerate and unwind the settlement, but his discretion is going to slowly slip away unless things are resolved and brought back into compliance.

I understand that you don't want Cooley and LCA directly interfacing with Texas, and that's okay. I'm happy to do it. But in making me the middle man, I just ask that you help me out here so I'm not in a very awkward and compromising position. Hope you can appreciate that.

Regards,
Andrew



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Thursday, December 2, 2021 1:55 PM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Subject:** Loot Crate - Texas Comptroller Follow Up

Good afternoon Andrew,

Thanks again for your time on the phone and efforts to get this issue resolved. I'm writing with a quick summary of the arrearages under the settlement agreement. I'm attaching a copy of the agreement and amortization schedule for reference.

Monthly payment amount:                              $31,980.52
Total arrearages through November 2021:        $223,863.64
Total arrearages including December 15, 2021:  $255,844.16

To date, the Comptroller has received the following payments:

| | |
|---|---|
| 8/14/20 | $24,946.59 and $7,033.93 |
| 10/23/20 | $24,946.59 and $7,033.93 |
| 10/27/20 | $24,946.59 and $7,033.93 |
| 12/10/20 | $24,946.59 and $7,033.93 |
| 1/26/21 | $24,946.59 and $7,033.93 |
| 2/9/21 | $31,980.52 |
| 2/26/21 | $25,747.16 and $6,233.36 |
| 6/14/21 | $25,750.57 and $6,229.95 |
| 8/09/21 | $25,752.25 and $6,228.27 |

The nine (9) payments made thus far would only get them through April 2021 on the amortization schedule. If my math is right, they would need to make up installments 10 – 17 in order to get current through the month of December 2021. I've included a payoff above for both November and December since technically December isn't due until 12/15/21. I would propose giving them until 12/15/21 to make payment of the arrearages and the December amount, but if they would rather cure the payments through November in short order and wait until the 15th for the December installment that would work as well.

Please let me know any questions or if I can provide any other information. I've secured until the end of next week (close of business on 12/10) to get an agreement for resolution before the Comptroller issues a notice of acceleration.

Thanks,
Chris

**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

2

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

## SETTLEMENT AGREEMENT

RE:   *In re: Old LC, Inc. (f/k/a Loot Crate, Inc.), et al.*
Bankruptcy Case No. 19-11791-BLS, United States Bankruptcy Court for the District of Delaware

The Debtors in the above-referenced jointly administered case (the "**Bankruptcy Case**") and the Texas Comptroller of Public Accounts (the "**Comptroller**"), have agreed to resolve the Comptroller's Claim No. 9 (the "**Claim**"), timely filed on August 20, 2019, under the following terms of this Settlement / Payment Agreement (the "**Agreement**"):

## AGREED BACKGROUND FACTS AND INFORMATION

A.      On August 11, 2019, Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc. and Loot Crate Parent, Inc. (collectively, the "**Debtors**") filed voluntary petitions with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

B.      On August 14, 2019, the Court entered an Order Approving Motion for Joint Administration directing joint administration of the Debtors' bankruptcy cases for procedural purposes [D.I. 38].

C.      On September 19, 2019, a Final Order was entered authorizing the Debtors to pay prepetition sales, use trust fund, and other taxes and related obligations [D.I. 187].

D.      On September 11, 2019, the Court entered an Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Related Contract Assumption and Assignment Procedures, (C) Authorizing the Debtors to Enter Into Stalking Horse Agreements and Approving Certain Bid Protections, Subject to a Further Hearing, (D) Scheduling a Sale Hearing, and (E) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief [D.I. 147].

E.      On October 1, 2019, the Court entered an Order approving the sale of substantially all of the Debtors' assets [D.I. 254].

F.      On October 8, 2019, the Debtors filed a Notice of Name Change noting that the Debtors changed their corporate names from the aforementioned Debtors to Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. [D.I. 265] with no effect on the

administration of the Bankruptcy Case, which remained jointly administered pursuant to prior Order [D.I. 38].

G.     On January 8, 2020, an Order was entered approving the motion of the Debtors for omnibus procedures by which the Debtors are authorized to negotiate and settle certain tax claims [D.I. 369]. Pursuant to the January 8, 2020 Order [D.I. 369], the Comptroller and Debtors have reached agreement on the resolution of the Comptroller's Claim.

## TERMS OF THE AGREEMENT

1.     The Debtors agree to pay, and the Comptroller agrees to accept, the total sum of **$1,055,156.70** in delinquent sales tax plus statutory interest which continues to accrue pursuant to Texas Tax Code 111.060 in full and complete satisfaction of the Comptroller's Claim (the "**Settlement Amount**").

> Claim 1 – 1910 AE - $863.92
> Claim 2 – 153-1812
> > Tax (audit) $857,671.99
> > Interest (audit) $77,590.40
>
> > 1808-1910
> > > Tax $115,502.65
> > > Interest $3,527.74
>
> Total:  $1,055,156.70

2.     The Debtors and the Comptroller (collectively, the "**Parties**") agree that the Settlement Amount shall be paid according to the following terms: payment of total outstanding tax and statutory interest (which continues to accrue pursuant to Texas Tax Code 111.060) over thirty-six (36) months in equal monthly installments, subject to monthly recalculation to account for statutory interest. Payments shall be due on the 15th of each month beginning on **August 15, 2020** and continuing each consecutive month thereafter until the Settlement Amount and all interest is paid in full.

3.     The Parties agree that the Comptroller shall have an allowed general unsecured claim in the Bankruptcy Case for penalties in connection with delinquent sales tax in the amount of **$111,924.35**.

4.     The Parties agree that within five (5) business days after the date on which this Agreement is dated, the Debtors shall agree to dismissal of all currently pending redetermination hearings.

5.     Any claims of the Texas Comptroller for sales tax principle and interest shall be nondischargeable. Interest shall continue to accrue on the outstanding claims of the Texas Comptroller at the statutory rate as set forth in Texas Tax Code 111.060. Upon default of payment of such claims by Debtors, the Texas Comptroller shall provide notice and the

Page **2** of **7**

opportunity to cure to the Debtors. If any such default is not timely cured within five (5) business days after notice, the Texas Comptroller shall be entitled to enforce its claims pursuant to state law without any further order of the court and the automatic stay shall be deemed lifted without further order of the Court to enable enforcement. Notwithstanding anything to the contrary herein, the Texas Comptroller shall have the right of specific performance against the Debtors' estate or the trust (as applicable) if any amounts due under this Agreement are not timely received by the Texas Comptroller.

6.      Notwithstanding anything to the contrary in this Agreement, the Parties expressly acknowledge and agree that, consistent with Section 111.015 of the Texas Tax Code, the Texas Comptroller preserves and maintains its right to pursue any available claims of derivative liability against any potentially liable persons, including but not limited to those created by Sections 111.016, 111.0611, 111.020, 111.024, and 171.255 of the Texas Tax Code, and any other remedy available at law or in equity. The Parties agree that the Debtors' liability for the Settlement Amount is for payment of priority sales taxes and associated interest. The Parties agree that any responsible parties under Texas Tax Code 111.016 are jointly and severally liable with the Debtors for the Settlement Amount.

4.      Payments under this Agreement must be made by check, cashier's check, or money order payable to the "Texas Comptroller of Public Accounts" with "Taxpayer ID 32073419973" appearing in the memo portion of the instrument. Payments shall be delivered as follows:

> If payment is sent via U.S. Mail:
> Texas Attorney General
> Bankruptcy & Collections Division
> c/o Christopher Murphy
> P.O. Box 12548
> MC-008
> Austin, TX 78711-2548
>
> If payment is sent via FedEx, UPS, or another private parcel-delivery service:
> Texas Attorney General
> Bankruptcy & Collections Division
> c/o Christopher Murphy
> 300 W. 15th Street, 8th Floor
> Austin, Texas 78701

5.      Payments must be post-marked by no later than the 15th day of the month in which they are due for such payment to be considered timely.

6.      Debtors' failure to make a payment to the Comptroller as required by this Agreement shall be an event of default (an "**Event of Default**"). The Comptroller shall send notice of the Event of Default to Debtors as follows:

Bryan Cave Leighton Paisner LLP

c/o Leah Fiorenza McNeill
1201 W. Peachtree Street, NW
14th Floor
Atlanta, GA 30309
leah.fiorenza@bclplaw.com

7.    A payment to cure an Event of Default (a "**Cure Payment**") must be made by cash, cashier's check, or by wire transfer. Cashier checks should be made payable to the Texas Comptroller of Public Accounts and include the Debtors' taxpayer number. Cure Payments, or if by wire transfer, confirmation of payment, must be mailed to: Texas Attorney General, Bankruptcy and Collections Division MC 008, Attn: Christopher Murphy, P. O. Box 12548, Austin, Texas 78711-2548.

8.    Debtors shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt as provided herein.

9.    Debtors, by this Agreement, expressly agree to release the State of Texas, the Texas Comptroller of Public Accounts, the Office of the Attorney General of Texas, and their employees and agents from any and all causes of action, suits, debts, controversies, judgments, claims, demands, damages, costs, liens, and liabilities whatsoever, at law or in equity, known or unknown, existing, or hereafter arising, related to the claims at issue in the Bankruptcy Case.

10.    Upon payment of the Settlement Amount in accordance with the above terms, the Comptroller will forever release, acquit, and discharge Debtors from all claims, demands, charges, costs of court, attorney fees, and causes of action of whatever nature on any legal theory arising out of the circumstances which lead to the filing of the Comptroller's Claim in the Bankruptcy Case.

11.    Debtors, by this Agreement, expressly agree to waive any potential refund claims that may exist now or in the future for all periods at issue in the Bankruptcy Case, including all periods at issue in connection with the Comptroller's Claim in the Bankruptcy Case.

12.    Once the Agreement is executed by the Parties, neither Debtors nor the Comptroller may assert any claims or defenses in connection with the Claim to avoid compliance with and/or enforcement of this Agreement. The Parties further agree that the Comptroller, in its sole discretion, may allocate the settlement proceeds to the Claim in any manner at the Comptroller's sole election.

13.    The Agreement has been fully read and understood by the Parties, and the Parties have had the opportunity to retain independent legal counsel to obtain advice as to the effect and import of its provisions. The Agreement constitutes a good faith settlement of the Claim and is entered into freely and voluntarily.

14.     Each Party and/or its counsel has participated in the drafting and negotiation of this Agreement and for all purposes it shall be deemed that the Parties jointly drafted this Agreement.

15.     The Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior agreements, negotiations, and discussions among them, with respect to the subject matter covered in it.  It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified, or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the respective Parties. The Parties further acknowledge and agree that they will make no claims at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.

16.     This Agreement is being made in and shall be deemed to be performed in the State of Texas, County of Travis.

17.     Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but, rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

18.     The Parties agree that this Agreement may be executed in two or more counterparts and via facsimile or email, each such counterpart and facsimile or email to be deemed an original, and taken together, shall constitute one and the same instrument.

[*Signatures on the following pages*]

**AGREED TO:**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation


| | |
|---|---|
| CHRISTOPHER S. MURPHY | DATE |

Texas State Bar No. 24079031
Assistant Attorney General
Bankruptcy & Collections Division MC 008
P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4867
Facsimile: (512) 936-1409
christopher.murphy@oag.texas.gov

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

**AGREED TO:**

_____        7/9/20
AUTHORIZED REPRESENTATIVE FOR DEBTORS        DATE

Print:   Christopher Davis

Title:        CEO


**AND:**

_____        7/9/20
OFFICER / DIRECTOR OF DEBTORS        DATE

Print:    Christopher Davis

Title:      CEO


602189502.2

Page **7** of 7

**AGREED TO:**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

7/17/20

_____        _____
CHRISTOPHER S. MURPHY                           DATE
Texas State Bar No. 24079031
Assistant Attorney General
Bankruptcy & Collections Division MC 008
P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4867
Facsimile: (512) 936-1409
christopher.murphy@oag.texas.gov

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

602189502.2

| | | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|---|
| 1 | | $1,055,156.70 | $5,055.96 | $26,924.56 | $1,028,232.14 |
| 2 | | $1,028,232.14 | $4,926.95 | $27,053.57 | $1,001,178.56 |
| 3 | | $1,001,178.56 | $4,797.31 | $27,183.21 | $973,995.35 |
| 4 | | $973,995.35 | $4,667.06 | $27,313.46 | $946,681.88 |
| 5 | | $946,681.88 | $4,536.18 | $27,444.34 | $919,237.55 |
| 6 | | $919,237.55 | $4,404.68 | $27,575.84 | $891,661.70 |
| 7 | | $891,661.70 | $4,272.55 | $27,707.97 | $863,953.72 |
| 8 | | $863,953.72 | $4,139.78 | $27,840.74 | $836,112.98 |
| 9 | | $836,112.98 | $4,006.37 | $27,974.15 | $808,138.83 |
| 10 | | $808,138.83 | $3,872.33 | $28,108.19 | $780,030.64 |
| 11 | | $780,030.64 | $3,737.65 | $28,242.87 | $751,787.76 |
| 12 | | $751,787.76 | $3,602.32 | $28,378.20 | $723,409.55 |
| | | year 1 end | | | |
| 13 | | $723,409.55 | $3,466.34 | $28,514.18 | $694,895.37 |
| 14 | | $694,895.37 | $3,329.71 | $28,650.81 | $666,244.55 |
| 15 | | $666,244.55 | $3,192.42 | $28,788.10 | $637,456.45 |
| 16 | | $637,456.45 | $3,054.48 | $28,926.04 | $608,530.40 |
| 17 | | $608,530.40 | $2,915.87 | $29,064.65 | $579,465.75 |
| 18 | | $579,465.75 | $2,776.61 | $29,203.91 | $550,261.84 |
| 19 | | $550,261.84 | $2,636.67 | $29,343.85 | $520,917.98 |
| 20 | | $520,917.98 | $2,496.07 | $29,484.45 | $491,433.53 |
| 21 | | $491,433.53 | $2,354.79 | $29,625.73 | $461,807.79 |
| 22 | | $461,807.79 | $2,212.83 | $29,767.69 | $432,040.09 |
| 23 | | $432,040.09 | $2,070.19 | $29,910.33 | $402,129.76 |
| 24 | | $402,129.76 | $1,926.87 | $30,053.65 | $372,076.11 |
| | | year 2 end | | | |
| 25 | | $372,076.11 | $1,782.86 | $30,197.66 | $341,878.45 |
| 26 | | $341,878.45 | $1,638.17 | $30,342.35 | $311,536.09 |
| 27 | | $311,536.09 | $1,492.78 | $30,487.74 | $281,048.35 |
| 28 | | $281,048.35 | $1,346.69 | $30,633.83 | $250,414.51 |
| 29 | | $250,414.51 | $1,199.90 | $30,780.62 | $219,633.89 |
| 30 | | $219,633.89 | $1,052.41 | $30,928.11 | $188,705.78 |
| 31 | | $188,705.78 | $904.22 | $31,076.30 | $157,629.47 |
| 32 | | $157,629.47 | $755.31 | $31,225.21 | $126,404.26 |
| 33 | | $126,404.26 | $605.69 | $31,374.83 | $95,029.42 |

| | | | | |
|---|---|---|---|---|
| 34 | $95,029.42 | $455.35 | $31,525.17 | $63,504.25 |
| 35 | $63,504.25 | $304.29 | $31,676.23 | $31,828.01 |
| 36 | $31,828.01 | $152.51 | $31,828.01 | $0.00 |
| **year 3 end** | | | | |

# Exhibit E

| | |
|---|---|
| **From:** | Reichardt, Lauren A <lreichardt@cooley.com> |
| **Sent:** | Friday, December 10, 2021 4:16 PM |
| **To:** | Schoulder, Andrew |
| **Cc:** | Hershcopf, Cathy; Fiorenza McNeill, Leah |
| **Subject:** | Re: Loot Crate |

Hi Andrew,

Long story short is that there has been a lot of turnover at the company over the past months. Ruby is no longer there and I don't think everything got communicated that should have before she left. They are working to become current and I will be following up next week as well.

On Dec 10, 2021, at 3:52 PM, Schoulder, Andrew <andrew.schoulder@bclplaw.com> wrote:

[External]

Cathy / Lauren – I was able to preempt Texas from asking for a status update by reporting that you were meeting with LCA.

Do you have an update? I rather not get on the phone with Texas next week until I have something substantive to tell him. Thanks.



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Friday, December 10, 2021 3:50 PM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Cc:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** RE: Loot Crate

Andrew,

Thanks for the update. Let's try to link up early next week once you hear from them? Please let me know what works best.

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Thursday, December 9, 2021 1:33 PM
**To:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Cc:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** Loot Crate

Chris - I followed up with Cooley. They are scheduled to speak with their client tomorrow to go through the issue. We are staying on top of them and will keep you posted.

Sent from my iPhone

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit F

**From:** Schoulder, Andrew
**Sent:** Tuesday, December 14, 2021 4:25 PM
**To:** 'Christopher Murphy'
**Cc:** Fiorenza McNeill, Leah
**Subject:** RE: Loot Crate

Cooley had the call with their client on Friday. I emailed Cooley an hour ago to see what the status is – and will revert as soon as I hear back.

Cooley understands the materiality of the issue and have been responsive. My understanding is (which confirms what I speculated on our call) the person who had the institutional knowledge and was responsible for making the payments left the company. It created a gap, which is why the payments came to a halt and no one identified the issue.



ANDREW SCHOULDER
Partner
BRYAN CAVE LEIGHTON PAISNER LLP · New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Sent:** Tuesday, December 14, 2021 11:59 AM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Cc:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** RE: Loot Crate

Good morning Andrew,

Just following up here to see if you have any updates?

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

**From:** Christopher Murphy
**Sent:** Friday, December 10, 2021 2:50 PM
**To:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Cc:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** RE: Loot Crate

1

Andrew,

Thanks for the update. Let's try to link up early next week once you hear from them? Please let me know what works best.

Thanks,
Chris



**Christopher Murphy**
Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 – MC 008
Austin, TX  78711-2548
Direct (512) 475-4867
Fax (512) 936-1409
christopher.murphy@oag.texas.gov

**From:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>
**Sent:** Thursday, December 9, 2021 1:33 PM
**To:** Christopher Murphy <Christopher.Murphy@oag.texas.gov>
**Cc:** Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>
**Subject:** Loot Crate

Chris - I followed up with Cooley. They are scheduled to speak with their client tomorrow to go through the issue. We are staying on top of them and will keep you posted.

Sent from my iPhone

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

# Exhibit G

| | |
|---|---|
| **From:** | Fiorenza McNeill, Leah |
| **Sent:** | Wednesday, January 19, 2022 12:45 PM |
| **To:** | Hershcopf, Cathy; 'rwinning@cooley.com' |
| **Cc:** | Schoulder, Andrew; Duedall, Mark; Mark Palmer; Alexandre Zyngier (azyngier@batutaadvisors.com); 'Chris Davis'; Reichardt, Lauren A |
| **Subject:** | Loot Crate - Notice of Defaults under Amended & Restated Asset Purchase Agreement and Sales Tax Funding Commitment |
| **Attachments:** | Sales Tax Funding Commitment - Notice of Defaults(604675491.10).pdf |

Cathy and Robert:

The attached Notice of Defaults is being sent to you on behalf of Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. and their Board of Directors.

We are available to discuss at your convenience.

Best,
Leah



**LEAH FIORENZA MCNEILL**
Partner
leah.fiorenza@bclplaw.com
T: +1 404 572 6925  F: +1 404 420 0925  M: +1 678 463 5460

BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center 14th Floor, 1201 W. Peachtree St., N.W., Atlanta, GA 30309-3471
**bclplaw.com**

https://bclpgrid.com/



January 19, 2022

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York  NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
bclplaw.com

Andrew J. Schoulder
Partner
Direct:  +1 212 541 1192
Fax:  +1 212 241 1392
andrew.schoulder@bclplaw.com

***Via email and Via Overnight Mail***
Loot Crate Acquisition LLC
c/o Cathy Hershcopf and Robert Winning
55 Hudson Yards
New York, New York 10001
Attention: Authorized Representatives
email:  chershcopf@cooley.com
          rwinning@cooley.com

Cooley LLP
55 Hudson Yards
New York, New York 10001
Attention: Cathy Hershcopf
Robert Winning
email:  chershcopf@cooley.com
          rwinning@cooley.com

**RE:    Sales Tax Funding Commitment Agreement – Notice of Defaults**

Dear Cathy and Robert:

I am writing you on behalf of Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (the "**Debtors**")[1] and their Boards of Directors (the "**Board**").

As you know, on November 18, 2021, we notified you (that is, Cathy and her colleague, Ms. Lauren Reichardt of Cooley LLP) that The Loot Company, f/k/a Loot Crate Acquisition LLC ("**LCA**") was in default of its obligations under Sections 8.5(e) of that certain Amended & Restated Asset Purchase Agreement, dated as of September 27, 2019 (as amended, the "**Purchase Agreement**"), as well as Section 1 of that certain Sales Tax Funding Commitment (the "**TFC**") with respect to tax payments due to the State of Texas (the "**Texas Default**"). In good faith, we accepted your initial written explanation that the Texas Default stemmed from the departure of Ruby Chiang, who Ms. Reichardt stated was the point person for arranging the tax payments. Given our prior success at working collaboratively, the Debtors provided LCA with a reasonable period of time to evaluate and cure the Texas Default. In reliance of that, on numerous

---

[1]       The Debtors are formerly known as Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc. and Loot Crate Parent, Inc., respectively.

January 19, 2022
Page 2



occasions, I personally informed the Attorney General's Office for the State of Texas that Cooley and LCA were looking into when the catch-up payments would be made.

Indeed, Ms. Reichardt told us, in writing that "Long story short is that there has been a lot of turnover at the company over the past months. Ruby is no longer there and I don't think everything got communicated that should have before she left. *__They are working to become current and I will be following up next week as well.__*" Email from Ms. Reichardt to Andrew Schoulder, Dec. 10, 2021 (emphasis added).

After further inquiry, we have now learned that this was not true. LCA has been in default of its obligations under the TFC since at least May 2021 with respect to all or substantially all of the TFC Payment Plans. At no point did LCA disclose the extent of these material defaults to the Debtors – even after we brought the Texas Default to your attention on November 18, 2021. Further, to date, LCA has not provided any evidence to the Board documenting its payment of the TCF Payment Plans as required by Section 2 of the TFC.

In light of the foregoing, on January 10, 2022, Mark Palmer (the Debtors' Chief Transformation Officer) and Alexandre Zyngier (the Debtors' Lead Independent Director) contacted Mr. Joel Weinshanker, the primary principal of LCA and its parent company, NECA.   During that conversation, Mr. Weinshanker acknowledged LCA's current breach of the Purchase Agreement and TFC and indicated that LCA has no current intention of curing these breaches.   Mr. Weinshanker stated that he has been taking certain measures to wind LCA down for the last several months with the intention to abandon the TFC Payment Plan obligations.   When specifically pressed, Mr. Weinshanker confirmed that he is not ceasing the whole business of LCA, but is instead "shifting" parts of the business to other entities controlled by NECA.  Mr. Weinshanker also stated that he is intending to use LCA revenues and LCA inventory to repay his capital injections into LCA, which Mr. Weinshanker characterized as secured loans that he and/or NECA advanced to LCA.

The Debtors and their professionals expended an inordinate amount of time and resources towards achieving each of the TCF Payment Plans in connection with the Purchase Agreement.  As you know, pursuant to Section 2.6(a)(iii) of the Purchase Agreement, LCA's performance of its TFC obligations was *__and continues to be__* a material component of the "Purchase Price." Section 2.6(a)(iii) states, in pertinent part:

> In addition to the assumption of the Assumed Liabilities and the Cure Costs, the aggregate consideration (the "**Purchase Price**") for the sale, transfer and delivery of the Purchased Assets, at the Closing, shall be an amount equal to . . . (iii) *__the aggregate amounts payable by Purchaser pursuant to Section 8.5 in respect of the Sellers' Sales Taxes, including those expenses advanced or reimbursed in connection with the negotiation and settlement of certain Sales Tax Obligations__*.

Given the materiality of this obligation as a condition to the sale, the Debtors specifically negotiated for the right of specific performance in Section 4 of the TFC.  Under that provision, the

January 19, 2022
Page 3



Debtors maintained the right to cause LCA to satisfy its obligations thereunder, plus the costs and expenses incurred by the Debtors in seeking such relief.

According to the January 10, 2022 call, it appears that Mr. Weinshanker wrongly believes that Section 7 of the TFC permits LCA to abandon his Purchase Price obligation while retaining the full benefit of the Debtors' assets and business opportunities. However, it is important that the Debtors and the Board clarify what Section 7 does not state or authorize.

Section 7 does not:

- permit LCA (or its affiliates) to obtain or retain the Debtors' assets (including proceeds of the pending litigation) after breaching its obligation to pay the Purchase Price in full;

- permit Mr. Weinshanker and NECA – or any of their other constituents, including any other officers, directors, or agents of LCA – to cause LCA to transfer the Debtors' assets, rights, or opportunities to affiliates to hinder or delay the Debtors from unwinding the sale and/or undermining the Debtors' rights of specific performance; or

- permit Mr. Weinshanker and NECA, or any of the constituents mentioned above, to cause LCA to monetize the Debtors' assets to satisfy purported insider loans or other obligations while leaving LCA unable to satisfy its Purchase Price obligation or the Debtors' right of specific performance.

In sum, Section 7 was not intended to (nor does it) absolve Mr. Weinshanker or his affiliates or constituents from breaching his payment obligations under the Purchase Agreement while transferring LCA's assets and/or business to affiliates to prevent the Debtors and other LCA creditors from seeking redress.

To that end, the Debtors and the Board demand that LCA cure all breaches under each of the TFC Payment Plans and maintain compliance with such obligations while the Debtors and LCA discuss a path forward in good faith (the "**Compliance Plan**"). The Debtors and the Board request that LCA deliver, *by January 24, 2022*, a written proposal to the undersigned on how LCA will implement the Compliance Plan. Further, the Debtors understand that LCA continues to generate a meaningful amount of revenue from subscribers and retains significant inventory and licensing rights. The Debtors and the Board demand that LCA immediately cease all transfers and payments to insiders and affiliates until the current situation is resolved.

Given that we have maintained a good working relationship with you and LCA since prior to the Petition Date, we would prefer to avoid having to resort to other remedies and strongly encourage LCA to work with the Debtors and the Board on a constructive resolution. However, for the avoidance of doubt, in addition to all other rights and remedies, if LCA intends to proceed with its intended course of breaches, LCA should not have any expectation of receiving any portion of the proceeds from the current litigation being pursued by the Official Committee of Unsecured Creditors.

January 19, 2022
Page 4



Moreover, anyone taking part in any diversion or distribution of assets from LCA to any affiliates of Mr. Weinshanker or NECA should be on notice that they may be personally liable for aiding and abetting fraud, fraudulent conveyances or other causes of action available to creditors of an entity that is having its assets diminished or "wound down" for the benefit of insiders, as Mr. Weinshanker indicated is occurring.

In light of the foregoing, we believe a consensual solution will be far less disruptive and costly than the current trajectory. We certainly hope that is the course of action we embark on.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Andrew Schoulder

Cc:     Alexandre Zyngier
        Christopher Davis
        Mark Palmer
        Lauren Reichardt

# Exhibit H

| | |
|---|---|
| **From:** | Hershcopf, Cathy <chershcopf@cooley.com> |
| **Sent:** | Tuesday, January 25, 2022 2:30 PM |
| **To:** | Mark Palmer |
| **Cc:** | Schoulder, Andrew; Fiorenza McNeill, Leah; Reichardt, Lauren A; Joel Weinshanker (joelw@necaonline.com) |
| **Subject:** | Loot Crate State Tax Funding Agreement Termination Letter |
| **Attachments:** | Jan 25 Letter to M Palmer re Sales Tax Funding Commitment(263130413.1).pdf |

**Cathy Hershcopf**
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Direct: (212) 479-6138
Mobile: (646) 483-5534
Practice | Bio | Blog | Twitter | LinkedIn

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Cooley

Cathy Hershcopf
T: +1 212 479 6138
chershcopf@cooley.com

January 25, 2022

**Via email and overnight mail**
Old LC Inc.
c/o Mark Palmer
3401 Pasadena Avenue
Los Angeles, CA 90031-1929
Mark@TheseusStrategy.com

Dear Mark:

I am writing to you on behalf of The Loot Company LLC (f/k/a Loot Crate Acquisition LLC) (the "**Buyer**") with respect to the Sales Tax Funding Commitment (the "**Agreement**") entered into on October 1, 2019 among the Buyer and Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc., and Loot Crate Parent, Inc. (the "**Sellers**").

Section 3(b)(ii) of the Agreement states that:

> This Agreement shall terminate, automatically and without any need for any action by any Person, upon the earliest to occur of the following: . . . (b) the date that any Seller Entity or any of their Representatives . . . (ii) asserts, or threatens to assert, any claim against any Non-Recourse Party (as defined below) in connection with this Agreement, the Purchase Agreement or any of the transactions contemplated by this Agreement or the Purchase Agreement (including in respect of any oral representations made or alleged to be made in connection therewith), whether in any Action, litigation or other proceeding, through counsel or in any other way[.]

Pursuant to Section 3(b)(ii) of the Agreement, the Agreement automatically terminated on January 19, 2022 based on Mr. Schoulder's letter that expressly stated that:

> [A]nyone taking part in any diversion or distribution of assets from LCA . . . should be on notice that they may be personally liable for aiding and abetting fraud, fraudulent conveyances or other causes of action available to creditors of an entity that is having its assets diminished or "wound down" for the benefit of insiders[.]

January 25, 2022
Page Two

████████████████████████████████████████

Sincerely,

*/s/ Cathy Hershcopf*

Cathy Hershcopf

Cc:     Joel Weinshanker
        Andrew Schoulder, Esq.
        Leah Fiorenza McNeill, Esq.

# Exhibit I

| | |
|---|---|
| **From:** | Schoulder, Andrew |
| **Sent:** | Wednesday, January 26, 2022 12:41 PM |
| **To:** | 'Hershcopf, Cathy'; Mark Palmer |
| **Cc:** | Fiorenza McNeill, Leah; Reichardt, Lauren A; Joel Weinshanker (joelw@necaonline.com); Walsh, Brian; Duedall, Mark |
| **Subject:** | RE: Loot Crate State Tax Funding Agreement Termination Letter |
| **Attachments:** | Response to Cooley Letter dated January 25.pdf |

Please see the attached.



**ANDREW SCHOULDER**
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - New York, NY USA
andrew.schoulder@bclplaw.com
T: +1 212 541 1192  M: +1 646 982 5330

Co-Chair, Special Situations Team: https://www.bclplaw.com/en-US/practices/corporate/special-situations-team.html

**From:** Hershcopf, Cathy <chershcopf@cooley.com>
**Sent:** Tuesday, January 25, 2022 2:30 PM
**To:** Mark Palmer <mark@theseusstrategy.com>
**Cc:** Schoulder, Andrew <Andrew.Schoulder@bclplaw.com>; Fiorenza McNeill, Leah <leah.fiorenza@bclplaw.com>; Reichardt, Lauren A <lreichardt@cooley.com>; Joel Weinshanker (joelw@necaonline.com) <joelw@necaonline.com>
**Subject:** Loot Crate State Tax Funding Agreement Termination Letter

**Cathy Hershcopf**
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Direct: (212) 479-6138
Mobile: (646) 483-5534
Practice | Bio | Blog | Twitter | LinkedIn

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.



BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York  NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630

bclplaw.com

January 26, 2022

Andrew J. Schoulder
Partner
Direct:  +1 212 541 1192
Fax:  +1 212 241 1392
andrew.schoulder@bclplaw.com

*Via email and Via Overnight Mail*
Loot Crate Acquisition LLC
c/o Cathy Hershcopf and Lauren Reichardt
55 Hudson Yards
New York, New York 10001
Attention: Authorized Representatives
email:  chershcopf@cooley.com
lreichardt@cooley.com

Cooley LLP
55 Hudson Yards
New York, New York 10001
Attention: Cathy Hershcopf
Lauren Reichardt
email:  chershcopf@cooley.com
        lreichardt@cooley.com

RE:    **Loot Crate Sales Tax Funding Commitment Agreement – Termination Letter dated January 25, 2022**

Dear Cathy:

I am writing you on behalf of Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (the "**Debtors**")[1] and their Boards of Directors (the "**Board**") in response to your letter dated as of January 25, 2022 (the "**Cooley Letter**").

The Cooley Letter is materially flawed in a number ways.  In short, neither Section 3(b) nor Section 7 of the Sales Tax Funding Commitment relieve Loot Crate Acquisition LLC ("**LCA**") from its material payment obligations nor shield Mr. Joel Weinshanker, NECA or any affiliate entities from liability for fraud, fraudulent conveyances and other claims arising from his/their conduct that, upon information belief, began on or around April 2021. Moreover, your efforts to bait BCLP under the subterfuge of confidential settlement discussions for the benefit of your client were to no avail.

---

[1]    The Debtors are formerly known as Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc. and Loot Crate Parent, Inc., respectively.

January 26, 2022
Page 2



To that end, I urge you to reread your own letter where you quote from Section 3(b)(ii) of the Sales Tax Funding Commitment –

> The Agreement shall terminate, automatically and without any need for any action by any Person upon the earliest to occur of the following: . . . (b) the date that any Seller Entity or any of their Representatives . . . (ii) asserts, or threatens to assert, any claim against any Non-Recourse Party (as defined below) **in connection with this Agreement, the Purchase Agreement, or any of the transactions contemplated by this Agreement or the Purchase Agreement . . .**

I further urge you to reread the language you quote from the letter sent by Bryan Cave Leighton Paisner LLP on January 19, 2022 (the "**BCLP Letter**") –

> [A]nyone taking part in **any diversion or distribution of assets from LCA to any affiliates of Mr. Weinshanker or NECA** should be on notice that they may be personally liable for aiding and abetting **fraud, fraudulent conveyances or other causes of action available to creditors of an entity that is having its assets diminished or "wound down" for the benefit of insiders, as Mr. Weinshanker indicated is occurring**.

As you can see from the language you quoted in the Cooley Letter, the BCLP Letter did not assert or threaten any claims against a Non-Recourse Party in connection with the **Purchase Agreement, the Sales Tax Funding Commitment or the transactions contemplated by the foregoing**. From the language you quote, the BCLP Letter clearly put parties on notice of potential liability for aiding and abetting fraud and fraudulent conveyances or receiving fraudulent conveyances that, according to Mr. Weinshanker's own admissions (and your own confirmation of the same), were perpetuated by Mr. Weinshanker and his affiliates approximately 18 months after the closing of the Purchase Agreement. As such, Section 3(b) is entirely inapplicable. There is no plausible interpretation of the agreements that would shield Mr. Weinshanker and his affiliates from claims for fraudulent conveyances and fraud (the latter of which is incapable of being waived as a matter of law). Is Cooley suggesting that the agreements shield Mr. Weinshanker and his affiliates from liability for fraudulent conveyances and fraud?

Further, I have not, in my letter or elsewhere, asserted or threatened any claim against Mr. Weinshanker or others that might trigger Section 3(b)(ii), such as vicarious liability for LCA's contractual obligations, piercing the corporate veil of LCA, alter ego, or any similar claim. The clear language of the BCLP Letter states that parties "may be personally liable for aiding and abetting fraud, fraudulent conveyances . . ." By itself, neither this nor any other statement give rise to "asserting" or "threatening" a claim. Moreover, I have addressed only extra-contractual liability for acts intended to hinder the Debtors in the enforcement of their rights, which plainly are not prohibited by the Purchase Agreement or the Sales Tax Funding Commitment.

January 26, 2022
Page 3



To be clear, nothing in the BCLP Letter or otherwise excuses LCA from its current legal obligation to cure the material breaches under the Sales Tax Funding Commitment.[2]  The Debtors have an express right of specific enforcement pursuant to Section 4 of the Sales Tax Funding Commitment. As such, the Debtors reiterate their demand that LCA arrange for the cure payments to be made immediately and provide a written proposal for continued compliance as previously requested by the BCLP Letter and ignored by LCA.  Likewise, since November 18, 2021, with knowledge of your client's intent and activities, you have continued to ignore our requests for written documentation regarding the status of each Payment Plan in violation of Section 2 of the Sales Tax Funding Commitment.



Regardless, as set forth above, the clear language that you quoted from Section 3(b) is limited to claims threatened or asserted in connection with the Purchase Agreement and Sales Tax Funding

---

[2]        Even if Section 3(b) and Section 7 of the Sales Funding Commitment Agreement shielded Mr. Weinshanker and his affiliates from liability for fraudulent conveyance and fraud or permitted LCA to terminate the agreement, LCA would still be obligated to cure the payment breaches that occurred prior to January 19, 2022 pursuant to Section 1 and 3(a)(iv) thereof.

January 26, 2022
Page 4



Commitment and does **not** apply to claims (threatened or asserted) arising from fraudulent conveyances and/or fraud that Mr. Weinshanker admitted to perpetuating as early as April 2021.



The statements Mr. Weinshanker made to Messrs. Zyngier and Palmer on January 10, 2022 spell out clear causes of action for fraud and actual fraudulent conveyances.

Ms. Reichardt will also need to be prepared to provide testimony to the Debtors and the Court with respect to the identity of the individuals that gave her false information, with the apparent expectations that she would lie to the Debtors' estates and the State of Texas in her prior written communications to us. As you are aware, the attorney client privilege is not available to assist in the perpetuation of fraud.

Very truly yours,

Andrew Schoulder

January 26, 2022
Page 5



Cc:     Alexandre Zyngier
        Christopher Davis
        Mark Palmer
        Joel Weinshanker