# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

---

| | | |
|---|---|---|
| Old LC, Inc. (f/k/a Loot Crate, Inc.), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Adv. No. 22-50107 (BLS) |
| The Loot Company (f/k/a Loot Crate Acquisition LLC), Loot (Assignment for the Benefit of Creditors), LLC, and John Doe, | § § § § § | Ref: D.I. 28 |
| Defendants. | § § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## THE LOOT COMPANY'S MOTION TO DISMISS (D.I. 28)

Plaintiffs Old LC, Inc.; Old LC Holdings, Inc.; Old LCF, Inc.; and Old LC Parent, Inc. (collectively, "***Debtors***" or "***Plaintiffs***") file this response to the motion of The Loot Company, f/k/a Loot Crate Acquisition LLC ("***Purchaser***") to dismiss this action (the "***Motion to Dismiss***," D.I. 28).

---

[1] Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. Debtors' noticing address in their Bankruptcy Cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

In further support of this Response, Debtors also notes the filing of Debtors' First Amended Complaint (the "***First Amended Complaint***" D.I. 31), earlier today in accordance with Fed. R. Civ. P. 15(a)(1)(B), made applicable to this action pursuant to Fed. R. Bankr. P. 7015.

## Argument

**1.    Count I Properly States a Claim for Breach of Contract**

First, as Purchaser agrees, the APA provides that all covenants contained therein survive at least twenty-four months after closing – which would be September 30, 2021.  *See* Opening Brief in Support of The Loot Company's Motion to Dismiss (the "***Opening Brief***" D.I. 29), at p. 13, note 3.  However, the First Amended Complaint also sets forth, at Count III, that Purchaser had an independent obligation to provide Debtors with evidence of payment of the subject taxes – and that Purchaser failed to do so.  It would be odd for a breach by Purchaser of its obligations – the duty to inform when payments were made – could allow Purchaser to evade those very obligations and their consequences.  Moreover, the First Amended Complaint alleges that Purchaser's breaches began as early as August, 2021.  *See* First Amended Complaint at ¶¶ 36, 52.  Discovery will establish further exactly when Purchaser started its breaches, but as alleged, Count I of First Amended Complaint is well within the deadlines set forth in the APA..

Moreover, Section 12.8 of the APA plainly provides that the APA, **along with all of its schedules and exhibits**, all constitute the entire agreement among the parties.  As such, the Sales Tax Funding Commitment is fully integrated with the APA itself, rendering it in opposite for Purchaser to state that the breach of the Sales Tax Funding Commitment is not also a breach of the APA.

For each of these reasons, Plaintiffs have stated a proper claim for breach of the APA, in addition to the breach of the Sales Tax Funding Commitment.

## 2. Whether the Sales Tax Funding Commitment was Terminated, or Not, Goes to the Measure of Damages – and Does not Provide Grounds to Dismiss

Purchaser spends substantial time arguing that a termination of the Sales Tax Funding Agreement took place either on January 19, 2022, or February 2, 2022.  *See* Opening Brief at p. 13.  As such, Purchaser argues, Counts II and II should be "partially dismiss[ed]."  *See* Motion to Dismiss at p. 1.

"Partial dismissal" is not a cognizable concept under Rule 12 – either a complaint states a claim or it does not.  Instead, what Purchaser is really seeking – but does not say – is a limitation on the damages available to Plaintiffs.  This would be appropriate at the summary judgment phase of this Adversary Proceeding, but not now.

Specifically, the Sales Tax Funding Commitment provides, that **after** it has been terminated, Purchaser shall have no further obligation to fund future tax settlement payments but it **still** must pay all Defaulted Payments.  Sales Tax Funding Commitment at p. 1, ¶ 1.  Thus, the entire argument of Purchaser as to Counts II and III relates to how much Purchaser owes, and not whether a claim has been stated.

In addition, the import of the language quoted by Purchaser is far from clear, and should not be tested at this phase of the litigation.  There was no "conjoining" of Mr. Weinshanker and Purchaser – all references to Mr. Weinshanker and his affiliates were in regard to entities that may have received Purchasers assets – not who would (or would not) be liable.  In addition, when Purchaser states that "[t]he threatened claims solely arise from the news that Purchaser was not paying" its obligations under the Sales Tax Funding Agreement, it flies in the face of the actual allegations – that Mr. Weinshanker himself stated that he was using Purchaser funds to pay himself, and transfer Purchaser's assets to himself.  *See* First Amended Complaint at ¶¶ 53-54.

In addition, Purchaser's argument that the equitable subordination count somehow is implicated in this also contradicts the Sales Tax Funding Commitment. *See* Opening Brief at p. 15. Equitable subordination does not impose liability – it merely subordinates an otherwise valid claim below other valid claims. Nothing in Sections 3(b)(i)(z) (which speaks to theories of liability) or Section 7 of the Sales Tax Funding Commitment (which speaks to parties that may be liable) address equitable subordination at all, which is not a theory of liability.

In fact, the Sales Tax Funding Agreement, ably negotiated by Purchaser's counsel, lists a bevy of claims that, if brought, would result in termination – such as piercing the corporate veil. *See* Section 7 of the Sales Tax Funding Commitment. If Purchaser and its counsel had intended an equitable subordination claim as to the balance of Purchaser's claims to trigger consequences such as termination, Purchaser should have so provided.

At bottom, whether the Sales Tax Funding Commitment was terminated is a matter that can and should be resolved in this litigation – and that may impact the prospective damages Plaintiffs can recover. But none of that should be determined in a motion to dismiss.

    **3.**    **Specific Performance Was Agreed to by the Parties, and Delaware Courts Honor Such Agreed-Upon Remedies.**

Purchaser cites ample caselaw for the proposition that specific performance is, in generic circumstances, not automatic. *See* Opening Brief at pp. 17-18. Purchaser is not incorrect, as any young law student could attest. But Purchaser ignores that the more particular circumstance here - where an agreement governed by Delaware law **stipulates** that specific performance may be an appropriate remedy.

In *Gildor v. Optical Solutions, Inc.,* No. 1416–N, 2006 WL 4782348 (Del. Ch. June 5, 2006) , the Delaware Chancery Court held that a contractual agreement that a breach will cause irreparable harm will be upheld for the purposes of awarding injunctive relief so long as the parties

did not include such agreement in the contract as a sham. *Gildor*, 2006 WL 4782348, at *11 (footnote omitted). Thus, as the *Gildor* court held, "[i]t would create an odd kink in Delaware law ... to determine that parties are permitted to stipulate by contract that a breach will give rise to irreparable harm **but not to stipulate that an aggrieved party may obtain specific performance as a remedy for breach**." It is well understood under Delaware law that if the parties clearly contract for specific performance as a remedy, the court should enforce it. *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810 (Del. Ch. 2007). If there is no provision for specific performance in a contract, or if the contract is ambiguous as to such remedy, then specific performance is not appropriate where money damages would suffice.

Here, the Sales Tax Funding Commitment **clearly** contemplated that the Plaintiffs may seek specific performance. Sales Tax Funding Commitment at § 4. Caselaw on other appropriate remedies at law is inapplicable, in light of the clear language of the contract, negotiated among sophisticated parties. *Gildor*, 2006 WL 4782348, at *11 ("Although this court has not had the prior opportunity to determine whether a contractual provision granting an aggrieved party a contractual right of specific performance is enforceable, Delaware courts do not lightly trump the freedom to contract and, in the absence of some countervailing public policy interest, courts should respect the parties' bargain.") (footnotes omitted).

4. **Plaintiffs Properly Pled Equitable Subordination.**

First, Purchaser alleges that Plaintiffs have not alleged the claim which Purchaser held, which would be subject to subordination. *See* Opening Brief at pp. 19-20. To the extent that flaw existed, the First Amended Complaint now provides greater detail on the claims Purchaser had (which apparently are now held by Loot ABC). *See* First Amended Complaint at ¶¶ 2, 18, 19, 34, 67, 114, 119, 120, 121.

Second, Purchaser argues, in a conclusory fashion, that Plaintiffs could not have suffered any damages from the lies told to it by Ms. Reichardt of the Cooley law firm (or, from the lies told to Ms. Reichardt, which she simply passed along – we will all know the trust in due course). *See* Opening Brief at pp. 20-21. Yet testing this at the motion to dismiss stage is not appropriate. Moreover, as set forth in the First Amended Complaint, the obligations of Purchaser under the Sales Tax Funding Commitment were fully intertwined with the obligations of Purchaser under the term sheet approved by this Court's Term Sheet Order – all of those obligations would allow Plaintiffs and the Committee, if successful in the D&O Litigation, to move forward with a plan of liquidation. The Sales Tax Funding Commitment would repay Debtors' priority sales tax claims, and Purchaser's funding of the D&O Litigation expenses would allow the D&O Litigation to create a fund which could be distributed to creditors in accordance with the term sheet. Had Plaintiffs known, last fall, that they were in need of a new source of litigation funding, they could have taken a variety of other steps, with the luxury of more time. This, in and of itself, is sufficient damages to support this Count (and the others).

Finally, what Purchaser is desperate to avoid is the answer to the very simple question: **why did Ms. Reichardt lie (or why was she told falsehoods, unwittingly passing them along) when all Purchaser had to say last fall was "I am never paying anything to you or the States, ever again"?** Purchaser, for reasons known only for now to Purchaser (or its counsel), is very anxious indeed not to allow any inquiry into this fundamental question. That, is what the Motion to Dismiss is all about: ensuring there is no inquiry as to why Purchaser didn't simply do what the honest but unfortunate debtor should always do, which is simply not pay and not make any promises to pay. Purchaser will have to explain why it chose the path of deceit, when the path of truth was so clear.

The claim for equitable subordination should be allowed to go forward – Plaintiffs are allowed to find out exactly what was the basis for Purchaser's months of deceit, and how Purchaser improved its position as a result of such actions. *See also* First Amended Complaint at Counts VIII and IX.

### 5. Plaintiffs Properly Pled Fraud.

First, as noted above, Purchaser's unwillingness to speak the truth in the fall of 2021 – until Mr. Weinshanker, in a stunning moment of veracity, admitted he was simply advancing his interests ahead of Purchaser and its creditors (*see* First Amended Complaint at ¶¶ 53-54) – resulted in further continued prosecution of the D&O Litigation and incurring costs which Debtors and the Committee are now seeking to cover. Ms. Reichardt's statements continued this ploy – keeping Plaintiffs at ease and at bay, while Purchaser plotted its assignment for the benefit of creditors.

Second, Purchaser seems to argue that since Ms. Reichardt had no duty to say anything, she is immune from speaking falsely (or immune from passing along the falsehoods of her client). This is rubbish. A dubious huckster has no duty to say that a magical tonic will restore youth and vigor, but if he indeed makes such a statement, then fraud can result when the tonic is revealed to be mere alcohol. A boiler room employee has no duty to tell the unwitting consumer that a stock will go up 1000% in a week – but if she does make such a claim, then an action for fraud will lie.

The *N. Penn Towns* case cited by Purchaser, *see* Opening Brief at p. 24, addresses how fraud **by omission** may not give rise to a claim when a defendant has no duty to disclose, but that is not what Plaintiffs are alleging. They are alleging an actual, material, false statements made to them – not fraud by omission. Indeed, the *N. Penn Towns* case **allowed** the fraud claims which were supported by actual false statements to go forward. *N. Penn Towns*, 2021 WL 3562849, at *19. Plaintiffs' claims for fraud should be allowed to go forward as well.

Next, in argument more appropriate for summary judgment, Purchaser argues that somehow Plaintiffs must know, and allege, Ms. Reichardt's intent in her false statements. *See* Opening Brief at pp. 24-25. Plaintiffs cannot know this, without discovery – only Ms. Reichardt, or the person who told her the lies she passed along, can explain that. (The *Fortis* opinion, relied upon by Purchaser below, also **refused** to dismiss a fraud claim on these very grounds – at the pleading stage, the plaintiff cannot be required to know why a defendant defrauded them and spoke falsely. *Fortis*, 2021 WL 5893997, at *13.)

Finally, Purchaser argues that Plaintiffs could not have justifiably relied on the lies the Plaintiffs were told, as Plaintiffs "could have … discovered [the falsity of the statements] with adequate due diligence." *See* Opening Brief at pp. 26-27. This is also bizarre. Plaintiffs would have no way of knowing what Purchaser was paying, except by making inquiry of Purchaser. This was also the very logical thing to do, in light of the partnership among Plaintiffs, Purchaser, and the Committee on the various financial obligations and duties they all owed to each other under the Term Sheet Order. Indeed, the *Fortis* opinion relied upon by Purchaser **refused** to dismiss a fraud count absent a finding that all due diligence by the plaintiff was completely lacking. *Fortis*, 2021 WL 5893997, at *13.

In short, a proper case of fraud has been alleged, and the various excuses offered by Purchaser as to why it must not have to explain its falsity should not be grounds to dismiss this Count.

**6.    Plaintiffs Properly Pled Unjust Enrichment.**

The unjust enrichment remedy is far expanded in the First Amended Complaint. *See* First Amended Complaint at ¶¶ 133-146. This in and of itself is grounds to deny that part of the Motion to Dismiss.

Moreover, the unjust enrichment remedy, as pled, now covers the interplay between the APA, the sales Tax Funding Commitment, and the Term Sheet Order – all of them together, if the D&O Litigation would bear fruit, would form the basis of a confirmable plan of liquidation. *See* First Amended Complaint at ¶¶ 137-144. And thus, to the extent the Purchaser (or Loot ABC) seeks to enjoy the benefits of one of those documents, without honoring the interconnectedness of the others, then unjust enrichment would be an appropriate remedy. To be sure, Plaintiffs are not using unjust enrichment to simply amplify a breach of contract action, and this remedy should be allowed to go forward.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Dismiss be denied.

Dated: March 21, 2022
Wilmington, Delaware

    ROBINSON & COLE LLP
    Natalie D. Ramsey (No. 5378)
    Jamie L. Edmonson (No. 4247)
    Mark A. Fink (No. 3946)
    1201 North Market Street
    Suite 1406
    Wilmington, Delaware 19801
    Telephone: (302) 516-1700
    Facsimile:  (302) 516-1699
    Email: nramsey@rc.com
           jedmonson@rc.com
           mfink@rc.com

    *Co-Counsel to Plaintiffs*

| BRYAN CAVE LEIGHTON PAISNER LLP | BRYAN CAVE LEIGHTON PAISNER LLP |
|---|---|
| Mark I. Duedall (No. 3346) | Andrew J. Schoulder (*Admitted pro hac vice*) |
| Brian C. Walsh (*Admitted pro hac vice*) | 1290 Avenue of the Americas |
| Leah Fiorenza McNeill (*Admitted pro hac vice*) | New York, New York 10104-3300 |
| 1201 W. Peachtree Street, NW, 14th Floor | Telephone: (212) 541-2000 |
| Atlanta, Georgia 30309-3471 | Facsimile:  (212) 541-4630 |
| Telephone: (404) 572-6600 | Email: andrew.schoulder@bclplaw.com |
| Facsimile:  (404) 572-6999 | |
| Email: mark.duedall@bclplaw.com | *Co-Counsel to Plaintiffs* |
|        Brian.walsh@bclplaw.com | |
|        leah.fiorenza@bclplaw.com | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing Plaintiffs' Response in Opposition to the Loot Company's Motion to Dismiss (D.I. 28) using the Court's CM/ECF filing system, which generated an email notice of the filing, linked to this document, to the following parties:

Erin R. Fay
Steven D. Adler
Bayard, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801

Cathy Hershcopf
Lauren A. Reichardt
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157

Morris James
Jeffrey R. Waxman
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

I further certify that on March 21, 2022, I caused a copy of the foregoing Plaintiffs' Response in Opposition to the Loot Company's Motion to Dismiss (D.I. 28) to be served via electronic mail to the party listed below.

Ron Bender
Levene, Neale, Bender, Yoo & Golubchik, LLP
2818 La Cienega Avenue
Los Angeles, CA 90034

Dated: March 21, 2022

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Mark I. Duedall*
Mark I. Duedall (No. 3346)
1201 W. Peachtree Street, NW, 14th Floor
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile: (404) 572-6999
Email: mark.duedall@bclplaw.com
*Counsel to Plaintiffs*

605008304