**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>OLD LC, INC., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 19-11791 (BLS)<br><br>(Jointly Administered) |
| OLD LC, INC., (F/K/A LOOT CRATE, INC.), *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>THE LOOT COMPANY (F/K/A LOOT CRATE ACQUISITION LLC), LOOT (ASSIGNMENT FOR THE BENEFIT OF CREDITORS), LLC AND JOHN DOE,<br><br>          Defendants. | Adv. Pro. No. 22-50107 (BLS)<br><br>**Re: Adv. D.I. 31** |

**OPENING BRIEF IN SUPPORT OF THE LOOT COMPANY'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. The Debtors' noticing address in these Chapter 11 Cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 West Peachtree Street, 14th Floor, Atlanta, Georgia 30309.

| | |
|---|---|
| Dated: April 29, 2022<br>Wilmington, Delaware | Erin R. Fay (No. 5268)<br>Steven D. Adler (No. 6257)<br>BAYARD, P.A.<br>600 N. King Street, Suite 400<br>Wilmington, Delaware 19801<br>Phone: (302) 655-5000<br>Email: efay@bayardlaw.com<br>       sadler@bayardlaw.com<br><br>Cathy Hershcopf (*Admitted pro hac vice*)<br>Lauren A. Reichardt (*Admitted pro hac vice*)<br>COOLEY LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 479-6000<br>Email: chershcopf@cooley.com<br>       lreichardt@cooley.com<br><br>David A. Vogel (*Admitted pro hac vice*)<br>COOLEY LLP<br>One Freedom Square<br>Reston Town Center<br>11951 Freedom Drive<br>Reston, VA 20190<br>Telephone: (703) 456-8039<br>Email: dvogel@cooley.com<br><br>*Attorneys for the Loot Company*<br>*(f/k/a Loot Crate Acquisition LLC)* |

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| SUMMARY OF ARGUMENT | | 2 |
| I. | TLC, Insolvent, Could Not Fund All of the Legacy Sales Taxes | 2 |
| II. | Debtors Cry Fraud | 4 |
| ARGUMENT | | 6 |
| I. | Debtors Face a Heightened Pleading Burden for Their Fraud Claim | 6 |
| II. | This Is Not Case About a Fraud | 6 |
| | A. The December 10 Email Was Not Misleading—Instead, Debtors Misread It | 7 |
| | B. Debtors Did Not Detrimentally or Justifiably Rely on Their Misreading of the Email | 7 |
| | C. Debtors Were Not Damaged by Their Misreading of the Email | 9 |
| | D. An Invalid Fraud Claim Would Unnecessarily Complicate This Proceeding | 10 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
 988 F.2d 1157 (Fed. Cir. 1993)..................................................................................6

*In re AgFeed USA, LLC*,
 558 B.R. 116 (Bankr. D. Del. 2016) ..........................................................................8

*Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*,
 829 A.2d 143 (Del. Ch. 2003)..................................................................................10

*In re Aspect Software Parent, Inc.*,
 578 B.R. 718 (Bankr. D. Del. 2017) ..........................................................................6

*Browne v. Robb*,
 583 A.2d 949 (Del. 1990) ..........................................................................................7

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997).....................................................................................6

*DCV Holdings, Inc. v. ConAgra Holding Inc.*,
 889 A.2d 954 (Del. 2005) ..........................................................................................6

*Fortis Advisors LLC v. Johnson & Johnson*,
 No. CV 2020-0881-LWW, 2021 WL 5893997 (Del. Ch. Dec. 13, 2021)................8

*ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*,
 No. CAN14C10236JRJCCLD, 2015 WL 3970908 (Del. Super. Ct. June 24,
 2015) ........................................................................................................................10

*Kost v. Kozakiewicz*,
 1 F.3d 176 (3d Cir. 1993)...........................................................................................6

*MHS Cap. LLC v. Goggin*,
 2018 WL 2149718 (Del Ch. 2018) ............................................................................8

*Mooney v. Pioneer Nat. Res. Co.*,
 No. CV N17C-01-225 RRC, 2017 WL 4857133 (Del. Super. Ct. Oct. 24,
 2017) ..........................................................................................................................9

*Red Mountain Holdings, Ltd. v. Stout P'ship*,
 2001 WL 34368400 (D. Del. Mar. 30, 2001) ............................................................7

*Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*,
 No. CV 2018-0059-JRS, 2020 WL 881544 (Del. Ch. Feb. 24, 2020).......................9

# TABLE OF AUTHORTIES
(continued)

**Page(s)**

*Smith v. Smitty McGee's, Inc.*,
 1998 WL 246681 (Del. Ch. May 8, 1998) ................................................................................8

*Zirn v. VLI Corp.*,
 681 A.2d 1050 (Del. 1996) .....................................................................................................8

**Other Authorities**

Rule 9(b) ....................................................................................................................................6, 9

Rule 12(b)(6) ..................................................................................................................................6

This adversary proceeding is a typical commercial dispute between two insolvent enterprises. Defendant The Loot Company ("**TLC**") purchased asset of Plaintiffs, the debtors in the underlying bankruptcy proceeding ("**Debtors**"). Hoping to transform Debtors' insolvent business into a profitable one, TLC agreed to fund legacy sales taxes that Debtors incurred pre-petition. Unfortunately, TLC never became solvent, needed in excess of $18 million in loans and remained unable to pay debts as they became due, including without limitation, some of the funding obligations for Debtors' legacy sales taxes. Debtors seek legal and equitable remedies resulting from TLC's insolvency. TLC is not moving to dismiss these claims but will address them in due course.

However, in the midst of this very unremarkable commercial dispute, Debtors bury a fraud claim. Debtors allege that, in December 2021, an email from TLC's counsel induced Debtors into falsely believing that TLC was paying outstanding amounts due. Debtors admit that, in early January 2022, TLC told them it was insolvent and could not make the payments. Thus, reduced to its essence, Debtors allege that one email defrauded them for approximately a month.

The email, which simply said that TLC was "working to become current," is not a valid basis for a fraud claim:

- The email makes no promises or guarantees about when or even if payments could be paid, so Debtors have not alleged the email made any misrepresentation;

- After receiving the email, Debtors continued pressing TLC and its counsel about the status of tax funding payments, so Debtors have not alleged they changed their position to their detriment based on the email;

- Debtors could have, but chose not to, contact other state agencies to determine if TLC had missed other payments, as the payment plans with each state at all times were between the particular state and the Debtors, so Debtors have not alleged that they lacked the ability to inquire further about the status of the payments; and

- For that month period between the email and their conversations with TLC, Debtors alleged no damages caused directly or solely by their receipt of the email.

Because their fraud claim lacks so many required elements, the Court should dismiss it.

**SUMMARY OF ARGUMENT**

The Court should dismiss Debtors' fraud claim (Count VI) in the First Amended Complaint ("**1AC**") (Dkt. No. 31) for several reasons. First, Debtors do not allege a misrepresentation; they cite four words in one email that Debtors misconstrue beyond its plain meaning. Second, Debtors do not allege that they justifiably relied on that email; they allege no action that they took or avoided taking that materially prejudiced their position, and they failed to inquire of other state agencies about the status of tax funding. Third, Debtors have not alleged any damage directly or proximately caused by the email.

**RELEVANT BACKGROUND**

This adversary proceeding concerns iterations of a business known as "Loot Crate." For ease of reference, "Old Loot Crate" ("**OLC**") means the Debtors' business sold in the underlying bankruptcy proceeding. *See* 1AC at 1 n.2 & ¶¶ 7 & 11. TLC was the entity formed post-petition and that acquired the assets of OLC. *Id.* ¶ 8. And "**Loot ABC**," also a defendant here, is the assignee entity that acquired the assets of TLC in the Assignment for the Benefit of Creditors ("**ABC**") transaction recently conducted in California. *Id.* ¶¶ 2 & 66-67.

**I.  TLC, Insolvent, Could Not Fund All of the Legacy Sales Taxes**

OLC either always had been or at some point became insolvent and petitioned this Court for reorganization. *Id.* ¶ 7. Mr. Joel Weinshanker saw the synergies of acquiring some of OLC's assets. *Id.* ¶ 14. As the Court will recall from the underlying proceeding, TLC, the only bidder for OLC's assets, entered into the Asset Purchase Agreement ("**APA**") with the Debtors, through which it acquired substantially all assets from OLC and assumed certain liabilities. *Id.* ¶ 17. Unfortunately, the Debtors' business model proved to not be sustainable and TLC became

insolvent. To protect its creditors and subscribers, TLC effectuated an assignment for the benefit of creditors by entering a General Assignment with Loot ABC. *Id.* ¶ 65.

One casualty of TLC's insolvency was its inability to fund OLC's legacy sales taxes. The relevant facts are easily summarized.

Among its pre-petition liabilities causing the bankruptcy petition, OLC did not pay over $5 million of sales taxes to dozens of states. *See* 1AC ¶¶ 20, 23 & 28. How these pre-petition liabilities would be paid was very carefully negotiated by both sides. *See id.* ¶ 31. For its part, TLC made sure not to inherit the liability for these legacy sales taxes, which were an "excluded liability" under the APA. APA § 2.4(c). Instead, TLC agreed to a Sales Tax Funding Agreement ("**STFA**") in which it promised to fund Debtors' obligations under certain payment plans for the legacy sales taxes. 1AC ¶¶ 22-23, 29 & Exh. A. Furthermore, to ensure that any potential liability for funding the sales taxes remained with TLC and did not spill over to Mr. Weinshanker's other companies, the STFA includes both a non-recourse provision and a provision that causes the STFA to terminate automatically if Debtors "assert, or threaten to assert, any claim" against Mr. Weinshanker or commonly-owned entities. STFA § 3(b).

Because TLC never became solvent, it was unable to fund some of the legacy sales taxes set forth in the STFA. *See* 1AC ¶¶ 76 & 84.

This adversary proceeding concerns Debtors' claims and remedies, to the extent they have any, for the contractual funding promises that TLC was unable to fulfill. *Id.* ¶¶ 68-122. Debtors also apparently want to dispute alleged but unidentified transactions by TLC, *id.* ¶¶ 147-155 & 166-177, or extract more than they are entitled to receive as a creditor of Loot ABC, *id.* ¶¶ 156-165. Debtors' own conduct will also be at issue. For instance, Debtors violated the STFA's non-recourse restriction by asserting claims against Mr. Weinshanker's commonly-owned entities on

the grounds that their assets are commingled with TLC. *Id.* ¶¶ 18-19, 57 & 119. Debtors also included in their pleading some of TLC's non-public, confidential information that Debtors wrongly obtained from a former employee of TLC. *See* TLC's Answer and Counterclaim (filed contemporaneously herewith).

## II. Debtors Cry Fraud

In the midst of their lengthy pleading, Debtors bury a claim for fraud against TLC's outside counsel at the Cooley law firm based on a few words in a short email.

Debtors were triggered to inquire about the status of TLC's funding of legacy taxes by November 2021. Debtors had not received notices from TLC of the payment of any taxes, which Debtors allege was required by the STFA. *Id.* ¶¶ 30 & 92. Then, on November 18, 2021, Debtors allege they received a notice of default from the State of Texas due to nonpayment of legacy taxes owed to it. *Id.* ¶ 36.

After the alleged notice of default, Debtors "immediately contacted" Cooley. *Id.* ¶ 38. At first, Cooley replied that it would check with TLC. *Id.* ¶ 40. On December 2, 2021, Debtors asked for "any update," which it reiterated on December 10, 2021. *Id.* ¶¶ 43 & 47. On December 10, 2021, a Cooley attorney sent a short email, "They [TLC] are working to become current and I will follow up next week as well." *Id.* ¶ 48. That email explained that a key TLC staff member had left the company and her replacement staff had not been told about the sales tax funding agreement. *Id.*

The December 10 email from Cooley in no way assuaged Debtors' concerns. Debtors allege that, "Between December 17, 2021 and January 3, 2021," their counsel "continued to follow up with Cooley on the status of the Texas Default." *Id.* ¶ 50. On January 7, 2021, one of Debtors' board members contacted a TLC employee and was told that TLC "had not made any payments" for legacy sales taxes "since August 2021." *Id.* ¶ 52. Debtors then demanded a call with Mr.

4

Weinshanker on January 10, 2021, at which time he told Debtors that TLC "had no current intention" of paying the sales taxes but "had been taking certain measures to 'wind down' [its] business." *Id.* ¶¶ 53-54.

Debtors filed this adversary proceeding on February 2, 2022—76 days after receiving the notice of default from Texas and 26 days after TLC confirmed it had stopped funding legacy taxes.

In Count VI of the 1AC (¶¶ 123-132), Debtors allege that the December 10 email was a fraud. Debtors allege TLC and/or Cooley intentionally meant to mislead them because TLC was not actually "working to become current." *Id.* ¶ 127. Debtors allege they "relied" on the December 10 email because they relayed to Texas state authorities the message that TLC was working to become current. *Id.* ¶¶ 49 & 51.

Debtors provide more color to their fraud claim in their response brief to TLC's motion to dismiss the initial complaint. *See* Plaintiffs' Response in Opposition to The Loot Company's Motion to Dismiss, at 7-8 (Dkt. No. 28) ("Debtors' Resp.").[2] They argue the December 10 email contains "lies" revealing counsel's "unwillingness to speak the truth" as part of a "ploy" to "keep[ ] [Debtors] at ease and at bay." *Id.* at 7 & 8. They equate counsel to a "dubious huckster" selling "a magical tonic [to] restore youth and vigor." *Id.*

However, completely absent from the First Amended Complaint is any allegation as to how the December 10 email negatively affected Debtors or caused them damage—other than just the boilerplate and conclusory allegation that they "have incurred damages." 1AC ¶ 130. Debtors already knew from the lack of notices from TLC, and from the notice of default from Texas a

---

[2] Debtors had no reason to file the Response. Debtors had filed the 1AC earlier that same day, so TLC's motion to dismiss the initial complaint was automatically mooted and no Response was required. The Court also should note that Debtors' counsel did not sign the Response, as required by Court rules.

5

month earlier, that TLC was not funding the legacy taxes. *Id.* ¶ 36. Debtors then learned less than a month after the December 10 email that TLC was insolvent and thus was not going to fund the taxes. *Id.* ¶¶ 52 & 54. Debtors do not allege how the email caused them any monetary damage or other prejudicial change of rights during this one-month period.

**ARGUMENT**

I. **Debtors Face a Heightened Pleading Burden for Their Fraud Claim**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the allegations in a complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "The purpose of [Rule 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *In re Aspect Software Parent, Inc.*, 578 B.R. 718, 722 (Bankr. D. Del. 2017) (quoting *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993)).

For Debtors' fraud claim to survive a motion to dismiss, the Court must hold that Debtors sufficiently alleged, *inter alia*, that: (1) TLC intentionally made a material misrepresentation, (2) on which Debtors justifiably relied, (3) that proximately caused actual damages to Debtors. *See DCV Holdings, Inc. v. ConAgra Holding Inc.*, 889 A.2d 954 (Del. 2005). The Court also must hold that Debtors pled the supporting factual allegations with particularity, Rule 9(b), because "[b]oilerplate and conclusory allegations will not suffice." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

II. **This Is Not Case About a Fraud**

The Court should dismiss Count VI alleging the claim for fraud, because the factual allegations in the 1AC simply do not state a valid claim for fraud.

### A. The December 10 Email Was Not Misleading—Instead, Debtors Misread It

Debtors manufacture a fraud claim based on their misreading of a few short words. The December 10 email did not say, "checks are in the mail." It says TLC was "working to become current," but those words make no promise of when or even if TLC will in fact ever "become current." "Working" is an extremely broad and generic term and often implies an effort with uncertain outcome.[3] Read correctly, the email tells the Debtors that TLC was re-familiarizing itself with the STFA and related obligations after the employee previously involved in making payments under the payment plans was no longer employed by TLC, and was determining what amounts were due and what was needed to be done in order to become current.

Thus, Debtors fail to allege the *sine qua non* of a fraud claim: a materially misleading statement. *Cf. Red Mountain Holdings, Ltd. v. Stout P'ship*, 2001 WL 34368400, at *4 (D. Del. Mar. 30, 2001) (dismissing fraud claim because Plaintiff failed to "identify any particular false or misleading statements made by Defendants"); *Browne v. Robb*, 583 A.2d 949, 955-56 (Del. 1990) (affirming dismissal of fraud claim based on an alleged statement that was not an actionable misrepresentation).

### B. Debtors Did Not Detrimentally or Justifiably Rely on Their Misreading of the Email

Second, Debtors have not alleged justifiable reliance on their misreading of the email, for two reasons: (1) they did not allege any detrimentally change of position in response to the email,

---

[3] For instance, a football team might tell its fans that it is "working" to get competitive this season, but that hardly should cause fans to rush to buy Super Bowl tickets (as any Eagles, Jets or Giants fan might appreciate these days). Or, to use Debtors' example, *see* Debtors' Resp. at 7, a "dubious huckster" might say he is "working" to create a "magical tonic," but such a statement is not a guarantee the tonic ultimately "will restore youth and vigor."

7

and (2) by alleging that they were already on alert about unfunded taxes, Debtors failed to exercise easy due diligence at their disposal.

To allege "reliance" validly, Debtors must allege some specific action they took (or avoided taking) that materially affected their rights specifically because they received the communication. *Smith v. Smitty McGee's, Inc.*, 1998 WL 246681, at *5 (Del. Ch. May 8, 1998) (allegation that plaintiff "relied upon" a statement was "insufficient," because "to plead reliance with particularity, plaintiff must explain what he did or refrained from doing, in justifiable reliance upon the statement"), *followed by In re AgFeed USA, LLC*, 558 B.R. 116, 132-33 (Bankr. D. Del. 2016). Furthermore, such reliance has to be "justified," which means Debtors "'did not have either the awareness or opportunity to discover the accurate information.'" *Fortis Advisors LLC v. Johnson & Johnson*, No. CV 2020-0881-LWW, 2021 WL 5893997, at *13 (Del. Ch. Dec. 13, 2021) (citation omitted).

Debtors thus fail to allege justifiable reliance for two reasons.

First, even if the December 10 email is deemed to be misleading, Debtors have not alleged that they detrimentally changed their position as a result of receiving the email. The email did not stop them from inquiring about the status of TLC's funding of the legacy taxes. Instead, Debtors allege they played "middleman" between TLC and Texas state authorities. 1AC ¶¶ 49 & 51. Even if the December 10 email caused Debtors mistakenly to tell Texas authorities that "the check is in the mail," playing "middleman" did not cause Debtors detrimentally to change their position or incur an obligation. *Cf. Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996) (holding plaintiff failed to state a claim for fraud because it failed to allege it took any action in reliance on the alleged communication); *MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *10 (Del Ch. 2018)

8

(dismissing fraud claim because plaintiff "never explain[ed] what it did in reliance on these misrepresentations and omissions").

Second, Debtors admit they had "awareness and opportunity" to uncover what they allege was the "truth" (that TLC was not funding sales taxes). Debtors certainly were "aware"; they allege that they received the Texas default notice a month earlier. 1AC ¶¶ 36, 92. Debtors also had "opportunity" to ask every other state whether TLC was paying the legacy taxes. Thus, even if they read the December 10 email as an iron-clad promise that "checks were in the mail," such "reliance" was not legally "justifiable."

Lacking allegations of justifiable reliance—and, in fact, some allegations undermine any justifiable reliance—the Court should dismiss the fraud claim. *See Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*, No. CV 2018-0059-JRS, 2020 WL 881544, at *36 (Del. Ch. Feb. 24, 2020) (dismissing fraud claim because "Plaintiffs have not pled justifiable reliance with particularity under Court of Chancery Rule 9(b)"); *Mooney v. Pioneer Nat. Res. Co.*, No. CV N17C-01-225 RRC, 2017 WL 4857133, at *8 (Del. Super. Ct. Oct. 24, 2017) (dismissing fraud complaint for, *inter alia*, failure to adequately plead justifiable reliance, finding "Plaintiff has not pled with particularity that he justifiably relied on Defendant's alleged misrepresentations because he fails to plead with particularity just how he so relied").

### C. Debtors Were Not Damaged by Their Misreading of the Email

Third, Debtors have not alleged—and certainly not with the required particularity—any legally cognizable damage. Debtors do not allege (as they cannot, because it would be untrue) that the amount of unpaid taxes increased or was affected by the December 10 email, nor that Debtors incurred any additional costs directly as a result of the December 10 email. Instead, the damages alleged in the 1AC arise from the nonpayment of taxes; none of these damages were proximately caused by Debtors' misreading of the December 10 email. Stated another way, the damages that

9

Debtors seek in this adversary proceeding would be the *same* if: (1) the December 10 email was never sent, or (2) the December 10 email said, "TLC has no intention to fund the taxes." Regardless what it might have said or how it was read, the email had no direct impact on Debtors' rights or interests.[4]

Lacking damages proximately caused by the alleged fraud, the Court should dismiss the fraud claim. *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 159 (Del. Ch. 2003) (dismissing fraud claim, in part, for failure to sufficiently allege causational injury and finding that it was "not enough for the plaintiffs to complain that the defendants knowingly failed to disclose an important matter and then jump directly to the observation that the plaintiffs believe that collectively they are now $9.5 million dollars short in their assets"); *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, No. CAN14C10236JRJCCLD, 2015 WL 3970908, at *5 (Del. Super. Ct. June 24, 2015) (dismissing fraud claim where plaintiff "pleads damages that are simply a 'rehash' of the breach of contract damages").

### D. An Invalid Fraud Claim Would Unnecessarily Complicate This Proceeding

To the extent the Court is inclined to allow this claim, despite its shortcomings, to proceed to discovery and be adjudicated at a later time, the circumstances here counsel against such an approach. Allowing this facially invalid fraud claim to proceed to discovery creates an *in terrorem* effect of forcing outside counsel to defend a frivolous claim that accuses them—not just their client—of committing fraud.

---

[4] Debtors have also argued that they "continued prosecution of the D&O Litigation and incur[ed] costs which Debtors and the Committee are now seeking to cover." Debtors' Resp. at 8. But none of those costs were proximately or directly caused by the December 10 email; Debtors would have incurred all of those costs regardless of the email.

10

In addition, this fraud claim will result in contentious satellite litigation about whether Debtors can take discovery on outside counsel's intentions and their communications with their client. Before withdrawing their motion for preliminary injunction, Debtors stated an intention to depose a Cooley attorney. Debtors later argued that they need discovery on the "intent" of the Cooley attorney when sending the December 10 email. Debtors' Response, at 8. If Debtors attempt to take discovery from TLC's counsel in this proceeding, the Court will have to resolve thorny disputes about the propriety of such an improper request and inherent privilege disputes, all related to a claim that was improperly pled and lacks any merit.

No reason exists to foist these time-consuming issues onto an otherwise typical commercial bankruptcy dispute, where the claim underlying such discovery is so palpably invalid.

[Remainder of page intentionally left blank]

## CONCLUSION

For the reasons set forth herein, The Loot Company respectfully requests that the Court grant this motion and dismiss Count VI with prejudice and grant such other relief as is just and proper.

Dated: April 29, 2022　　　　　　　　　　BAYARD, P.A.
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　*/s/ Erin R. Fay*
　　　　　　　　　　　　　　　　　　　　Erin R. Fay (No. 5268)
　　　　　　　　　　　　　　　　　　　　Steven D. Adler (No. 6257)
　　　　　　　　　　　　　　　　　　　　600 N. King Street, Suite 400
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　Phone: (302) 655-5000
　　　　　　　　　　　　　　　　　　　　Email: efay@bayardlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　sadler@bayardlaw.com

　　　　　　　　　　　　　　　　　　　　COOLEY LLP
　　　　　　　　　　　　　　　　　　　　Cathy Hershcopf (*Admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Lauren A. Reichardt (*Admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　55 Hudson Yards
　　　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 479-6000
　　　　　　　　　　　　　　　　　　　　Email: chershcopf@cooley.com
　　　　　　　　　　　　　　　　　　　　　　　　　lreichardt@cooley.com

　　　　　　　　　　　　　　　　　　　　David A. Vogel (*Admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　COOLEY LLP
　　　　　　　　　　　　　　　　　　　　One Freedom Square
　　　　　　　　　　　　　　　　　　　　Reston Town Center
　　　　　　　　　　　　　　　　　　　　11951 Freedom Drive
　　　　　　　　　　　　　　　　　　　　Reston, VA 20190
　　　　　　　　　　　　　　　　　　　　Telephone: (703) 456-8039
　　　　　　　　　　　　　　　　　　　　Email: dvogel@cooley.com


　　　　　　　　　　　　　　　　　　　　*Attorneys for the Loot Company*
　　　　　　　　　　　　　　　　　　　　(*f/k/a Loot Crate Acquisition LLC*)