# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| Old LC, Inc., *et al.*,[1] | § | Case No. 19-11791 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| | § | |
| Old LC, Inc. (f/k/a Loot Crate, Inc.), *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adv. No. 22-50107 (BLS) |
| | § | |
| The Loot Company (f/k/a Loot Crate | § | |
| Acquisition LLC), Loot (Assignment | § | |
| for the Benefit of Creditors), LLC, and | § | |
| John Doe, | § | |
| Defendants. | § | |

## BRIEF IN RESPONSE TO LOOT (ASSIGNMENT FOR THE BENEFIT OF CREDITORS), LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Old LC, Inc. (7119), Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc.  The Debtors' noticing address in these Chapter 11 cases is c/o Bryan Cave Leighton Paisner LLP, Attn: Mark I. Duedall, 1201 W. Peachtree Street, 14th Floor, Atlanta, Georgia 30309.  The Debtors were formerly named Loot Crate, Inc., Loot Crate Holdings, Inc., LC Funding, Inc., and Loot Crate Parent, Inc.  Following the closing of the sale of substantially all of the Debtors' assets, the Debtors filed the necessary documentation in the applicable jurisdictions to change their corporate names and filed the *Notice of Changes of Debtors' Names and Case Caption* [D.I. 265] with the Court, all in accordance with the terms of the sale and the order approving the same [D.I. 254].

605424037

Dated: June 30, 2022

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Mark I. Duedall*
Mark I. Duedall (No. 3346)
Brian C. Walsh *(Admitted pro hac vice)*
1201 W. Peachtree Street, NW, 14th Floor
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile:  (404) 572-6999
Email: mark.duedall@bclplaw.com
            Brian.walsh@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Andrew J. Schoulder (*Admitted pro hac vice*)
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-2000
Facsimile:  (212) 541-4630
Email: andrew.schoulder@bclplaw.com

-and-

**ROBINSON & COLE LLP**
Jamie L. Edmonson (No. 4247)
1201 North Market Street
Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile:  (302) 516-1699
Email: jedmonson@rc.com

*Co-Counsel to Plaintiffs*

605424037

# TABLE OF CONTENTS

**Summary of Argument**................................................................................................... 1

**Standard of Review**..................................................................................................... 1

**Argument** ................................................................................................................ 2

    I.    **The Assignee's Claim That an Assignee in a General Assignment For the Benefit of Creditors Does Not Assume Any Debts of the Assignor Does Not Provide Grounds For Dismissal.** .................................................................................................... 2

    II.   **The Assignee's Request for Dismissal of Debtors' Claim For Equitable Subordination Should Be Denied, for the Assignee Takes any Claims of the Purchaser / TLC with All Impediments, Under Third Circuit Precedent.** ................. 5

    III.  **The Assignee's Request For Dismissal Of Debtors' Claim For Unjust Enrichment Should Be Denied.** ......................................................................................... 6

    IV.  **This Court's Precedent Squarely Allows Setoff of Post-Petition Claims *of* the Debtor against Post-Petition Claims *against* the Debtor.** ............................................ 7

    V.   **The Assignee Fails To Establish That Plaintiffs Are Not Entitled To The Remedy of Constructive Trust As A Matter of Law.** ...................................................... 9

**Conclusion** ............................................................................................................. 11

605424037

# **TABLE OF AUTHORITIES**

Cases

*Credit Managers Association v. Brubaker*, 285 Cal. Rptr. 417 (Ct. App. 1991 ........................................... 4

*In re Alfar Dairy*, 458 F.2d 1258 (5th Cir.), *cert. denied*, 409 U.S. 1048 (1972) ................................................. 7

*In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 168 (3d Cir. 2018) ................................................................ 5

*In re Fordson Eng'g*, 25 B.R. 506 (Bankr. E.D. Mich. 1982)......................................................................... 8

*In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013)................................................................................... 5, 8

*In re Mervyn's Holdings, LLC*, 426 B.R. 488, 494 (Bankr. D. Del. 2010)................................................. 1, 2, 7

*In re Mohawk Indus.*, 82 B.R. 174 (Bankr. D. Mass. 1987)......................................................................... 8

*In re Seal*, 192 B.R. 442, 457 (Bankr. W.D. Mich. 1996) ........................................................................... 7

*Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019)......................................... 8

*Official Committee of Unsecured Creditors v. Tyson Foods, Inc. (In re Quantum Foods, LLC)*, 554 B.R. 729 (Bankr. D. Del. 2016) ........................................................................................................................ 8, 9

*Seiden v. Kaneko*, No. CV 9861-VCN, 2015 WL 7289338, at *14 (Del. Ch. Nov. 3, 2015)...................... 10

*Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*, 62 Cal. Rptr. 3d 896, 900 (Ct. App. 2007) ................................................................................................................................................ 4

Plaintiffs Old LC, Inc., Old LC Holdings, Inc., Old LCF, Inc., and Old LC Parent, Inc. (collectively, the "***Debtors***"), respectfully submit this Brief in response to the Motion to Dismiss (the "***Motion***") the First Amended Complaint (the "***FAC***") filed by Loot (Assignment for the Benefit of Creditors), LLC ("***Loot ABC***" or the "***Assignee***").

## Summary of Argument

The Assignee's arguments for dismissal do not pass muster.  The Assignee's argument that an assignee in a general assignment for the benefit of creditors does not assume any debts of the assignor is far too broad an assertion and, even if true, does not mean that the Assignee is immune from suit in federal court.  Furthermore, the theme running through the Assignee's Memorandum of Law is the false narrative that a claim or other right against a third party can be laundered through an assignment and cleansed of all impediments, but the Memorandum of Law does not cite any cases to support such an incredible claim (none exist, and indeed the Third Circuit has expressly rejected this theory).  On the contrary, the Debtors submit that the FAC asserts plausible claims for relief against Loot ABC, and the Motion should be denied for each of the reasons set forth below.

## Standard of Review

"Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), governs a motion to dismiss for failure to state a claim upon which relief can be granted."  *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 494 (Bankr. D. Del. 2010).  It is well-established that "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Id.* (citation and quotation omitted).

1

"In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff." *Id.* Additionally, "[t]he court may not consider matters outside of the pleadings unless the court is willing to treat the matter as a motion for summary judgment." *Id.*

<u>**Argument**</u>

I.  **The Assignee's Claim That an Assignee in a General Assignment For the Benefit of Creditors Does Not Assume Any Debts of the Assignor Does Not Provide Grounds <u>For Dismissal</u>.**

The Assignee urges the Court to dismiss the Debtors' claims because the Assignee has not assumed the debts of the Purchaser (also known as The Loot Company, or "***TLC***"). Whatever the merits of this assertion—and it is far too broad, as explained below—it does not mean that the Assignee is immune from suit in a federal court. Because *that* is the proposition that the Assignee must establish to prevail at this preliminary stage of this adversary proceeding, the Court should deny the motion and reserve for later any decision about exactly what the Assignee might or might not be required to pay if the Debtors prevail.

As an initial matter, it is worth noting some of the absurdities of the Assignee's position:

- The Assignee argues that the Debtors "have not established that they even have a liquidated claim in the Loot ABC" (Mem. of Law at 11). This is true, but it hardly supports for the Assignee's motion. To argue that the Debtors may not attempt to liquidate a claim because they do not have a liquidated claim is textbook question-begging.

2

605424037

- The Assignee claims that it is not responsible for the liabilities of the Purchaser, while at the same time the Purchaser claims that it has no assets.  If this were true, the Purchaser would be able to escape responsibility for all of its debts, to the considerable benefit of its owners.  Not even bankruptcy—a federal program with constitutional backing and its own dedicated court system, and one that has always been open to the Purchaser—permits such an extraordinary result.

- The Assignee complains that this action will "interfere with the Assignee's administration of the Loot ABC Estate for the benefit of all creditors" (Mem. of Law at 9).  But if this Court determines that some of the assets of the ABC estate are held in a constructive trust, or that the Debtors have a right of setoff entitling them to satisfy some portion of their claim out of funds otherwise payable to the ABC estate, or that the ABC estate can recover nothing due to the Purchaser's breaches of the APA's requirement that the Purchaser pay various taxes, there will be no interference.  The other creditors of the ABC estate will recover exactly the same as if the Purchaser had liquidated its own assets.  The Assignee cannot claim to have obtained greater rights in the assets it received from the Purchaser than the Purchaser itself had.  (Indeed, as discussed below, the Third Circuit would never allow such a result, as many claims purchasers have sadly learned over the years in the context of Section 502(d) of the Bankruptcy Code.)

On the merits, the Assignee's position is no stronger.  The fundamental premise of the Assignee's argument—that the Assignee is not liable for the debts of the assignor—is at least overbroad.  Even if an assignee is not "personally liable" for obligations under the assignor's

3

contracts, as the court held in *Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.*, 62 Cal. Rptr. 3d 896, 900 (Ct. App. 2007), that does not mean that an assignee is not subject to suit or that a judgment cannot be entered against it, or that its assets are cleansed of defect by virtue of the assignment.  For example, one of the principal authorities cited in *Sherwood* is *Credit Managers Association v. Brubaker*, 285 Cal. Rptr. 417 (Ct. App. 1991.  In that case, the trial court entered judgment in favor of a creditor for $5,000 for *quantum meruit*, and the court of appeal affirmed.  *See id.* at 421.

Despite its request for dismissal of this action, the Assignee acknowledges that the Debtors may have a claim against the ABC estate, asserting that "at best, any such claim of the Debtors would constitute a general unsecured claim" (Mem. of Law at 17).  Assuming for present purposes that this is accurate,[1] then the Debtors would be unable to establish that general unsecured claim in this adversary proceeding *only* if this Court lacked subject-matter jurisdiction or if the Assignee were immune from suit.  The former is plainly not true, and the Assignee does not claim the latter.

There may well be a dispute at trial or after judgment about exactly what the Debtors may recover from the ABC estate, but that potential dispute does not permit the Assignee to cut this litigation off at the knees, and magically take the Purchaser's assets free of their impediments. Because the Debtors have stated claims on which relief may be granted against the Assignee, the Motion should be denied.

---

[1]    As discussed below, success on the setoff claim, the equitable subordination claim, or the imposition of a constructive trust might give the Debtors something far more.

4

605424037

**II.     The Assignee's Request for Dismissal of Debtors' Claim For Equitable Subordination Should Be Denied, for the Assignee Takes any Claims of the Purchaser / TLC with <u>All Impediments, Under Third Circuit Precedent</u>.**

The Assignee argues that Debtors' claim for equitable subordination must be dismissed because the FAC does not allege that the Assignee is an insider, but such an allegation is not required.  The standard for finding inequitable conduct is much lower when the claimant is an insider, but inequitable conduct warranting equitable subordination can still exist where the claimant is not.

But fundamentally, while it is true that Debtors do not allege inequitable conduct on the part of the Assignee, the Assignee's claims against the estate (as to any portion of the D&O claim proceeds) were assigned to it by TLC, against whom Debtors allege fraud and many other counts in the FAC.  Here, the Third Circuit has already spoken to this issue – a claim subject to challenge due to the actions or conduct of the original claimant cannot be "cleansed" or "whitewashed" of its impediments by simply transferring that claim to a third party.  *In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013).  This is exactly what the Debtors allege.  *See* FAC at ¶ 114; *see also In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 168 (3d Cir. 2018) (stating that, when a claim is transferred, "the transferee assumes the same limitations as the transferor [and that] [o]therwise, buyers could revive disallowed claims, laundering them to receive better treatment in new hands").

Finally, and notably, *TLC did not file a motion to dismiss the equitable subordination count of the FAC*.  It would be odd indeed if the source of the alleged inequitable conduct – TLC  – must defend the action (as TLC must, by only answering, and not seeking to dismiss), yet its assignee which stands in its shoes, *see KB Toys*, is relieved of any such impediment as to claims against the Debtors' estates *received from TLC*.

5

605424037

**III.    The Assignee's Request For Dismissal Of Debtors' Claim For Unjust Enrichment Should Be Denied.**

The Assignee contends that the Debtors' claim for unjust enrichment should be dismissed because there are "Agreements between Debtors and TLC [that] form the basis for any relief to which Debtors are entitled, and unjust enrichment is therefore not an available remedy." (Mem. of Law at 14). The Assignee's contention is without merit. More specifically, the Assignee's request for dismissal of the unjust enrichment claim should be denied as a result of the Assignee's own admissions.

The Assignee alleges that a claim for "unjust enrichment will be dismissed if the complaint alleges an express, enforceable contract that controls the parties' relationship." *Id.* In the same breath, the Assignee contends that "the Assignee is not a party to those contracts" between Purchaser and Debtor. *Id.* By the Assignee's own admission, the fact that the First Amended Complaint includes reference to various contracts does not preclude Debtors' unjust enrichment claim against the Assignee.

The Assignee further claims that it is not responsible for the liabilities of the Purchaser, yet then changes tack and argues that the "Agreements between the Debtors and [Purchaser] form the basis for any relief to which the Debtors are entitled . . . ." *Id.* at 14 and 16. The Assignee cannot have it both ways. The Assignee is either responsible for the liabilities of the Purchaser as a result of stepping into the shoes of the Purchaser and is thus a party to the contracts or is not. If the Assignee is not liable for the debts of the Purchaser, there is no basis for the Assignee's contention that the contracts bar the Debtors' unjust enrichment claim.

Moreover, the Assignee claims that the Sales Tax Funding Commitment terminated upon the Debtors' filing of the FAC. *Id.* at 5 ("the Debtors filed the FAC amending the complaint filed

6

in the Purchaser Adversary Proceeding, naming the Assignee, thereby triggering the automatic termination of the Sales Tax Funding Commitment, if it had not yet been previously terminated."). Assuming *arguendo* that the Sales Tax Funding Commitment terminated, it neither bars a claim for unjust enrichment, nor does it eviscerate the fact that TLC materially breached the Asset Purchase Agreement, entitling it to nothing of the D&O claim proceeds.

Facts may be developed that ultimately show that the contract remains in effect or does not, or that the Assignee is responsible for the Purchaser's debts or is not, but that does not merit the Court dismissing the unjust enrichment claim based on the face of the FAC.  At this stage in the litigation, it is not possible to conclude there is no viable unjust enrichment claim against the Assignee.  Moreover, it is not the appropriate time to "resolve disputed facts or decide the merits of the case." *In re Mervyn's Holdings, LLC*, 426 B.R. at 494.  For all of these reasons, the Assignee's request for dismissal of the Debtors' unjust enrichment claim should be denied.

## IV.    This Court's Precedent Squarely Allows Setoff of Post-Petition Claims *of* the Debtor <u>against Post-Petition Claims *against* the Debtor</u>.

The Assignee's arguments to dismiss the FAC's setoff count are a complete misstatement of the law.

First, the Assignee asserts that setoff is only available for pre-petition claims.  (Mem. of Law at 14-15).  This is false – setoff requires mutuality, which is to say the opposing claims must either be both pre-petition, or both post-petition.  A post-petition claim against the debtor can be set off against post-petition monies owed to the debtor.  *In re Alfar Dairy*, 458 F.2d 1258 (5th Cir.), *cert. denied*, 409 U.S. 1048 (1972); *In re Seal*, 192 B.R. 442, 457 (Bankr. W.D. Mich. 1996); *In*

*re Mohawk Indus.*, 82 B.R. 174 (Bankr. D. Mass. 1987); *In re Fordson Eng'g*, 25 B.R. 506 (Bankr. E.D. Mich. 1982).

Indeed, this Court expressly held that post-petition rights against a debtor can be set off against post-petition liability to the debtor in *Official Committee of Unsecured Creditors v. Tyson Foods, Inc. (In re Quantum Foods, LLC)*, 554 B.R. 729 (Bankr. D. Del. 2016). That is exactly what the Debtors seek to do here – if the Purchaser owes money to the Debtors for the post-petition obligations under the Asset Purchase Agreement, the Sales Tax Funding Commitment, and/or the Term Sheet Order, then the Debtors can set off any post-petition entitlement of the Purchaser to any proceeds of the D&O Litigation (which is a claim, *see* 11 U.S.C. 102(2)). *See* FAC at ¶¶ 163-64. And if Loot ABC took an assignment of whatever rights Purchaser may have, such assignment cannot whitewash the accompanying setoff rights the Debtors have. *KB Toys*, *supra*. For the Assignee to argue that setoff is only available on mutual pre-petition debts simply ignores *Quantum Foods*.

Finally, nothing about what the Debtors allege implicates a triangular setoff. (Mem. of Law at 15). Again, and to be clear, each and every one of Loot ABC's rights in this bankruptcy case are derivative of the Purchaser's – its assignor. Everyone would agree that bankruptcy does not enhance a debtor's rights. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("Whatever 'limitation[s] on the debtor's property [apply] outside of bankruptcy[ ] appl[y] inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.'" (quoting D. Baird, *Elements of Bankruptcy* 97 (6th ed. 2014)). The undersigned has found no caselaw indicating that an assignee in an ABC somehow has greater rights in assets than its assignor previously had.

All the FAC seeks to do in this count is to preserve the estate's rights against TLC's entitlement to any estate assets, *and* as against Loot ABC's entitlement for the simple reason that Loot ABC stands in TLC's shoes.  Arguments that setoff only applies to pre-petition debts were rejected by this Court in *Quantum Foods*, and references to theories of triangular setoff are just an attempt to distract the Court from the very simple propositions the Debtors allege in this count.

## V.    The Assignee Fails To Establish That Plaintiffs Are Not Entitled To The Remedy of Constructive Trust As A Matter of Law.

The Assignee claims that the eleventh count in the FAC for the remedy of constructive trust "does not identify any parties that it is alleged against and does not specifically name the Assignee or the Loot ABC Estate."  (Mem. of Law at 22).  However, paragraph 177 of the FAC reads "[t]o the extent the remedies above do not make Debtors' whole, then a constructive trust exists as to Purchaser's assets, and such trust carries over to Loot ABC's assets (all of which were obtained from Purchaser)."  The parties are clearly identified, and Loot ABC is clearly named.

The Assignee further notes that "'constructive trust' is simply a remedy and not a claim for relief."  (Mem. of Law at 16).  Yet, the Assignee does not establish that the Debtors are not entitled to this remedy.  The Assignee's only substantive claim is that "[t]he D&O Claims are not property of the estate, having been sold to TLC and long thereafter, assigned to the Loot ABC."  *Id*.

First, this is false, absolutely and categorically.  The D&O Claims were not sold, as in order for such claims to be sold, TLC must have elected to take such claims by a date certain, and it did not.  *See* FAC at ¶ 120, citing Purchase Agreement § 2.1(u).  Indeed, as everyone in this case knows, the Creditors' Committee has been prosecuting those claims for years, with TLC's (and the Loot ABC's) knowledge, acquiescence, and often cheerleading.  How could the Creditors' Committee be prosecuting claims owned by a non-estate third party like TLC?  This statement is

9

rubbish, as the D&O Claims have always belonged to the Debtors' estates – it is only the proceeds to which TLC ever had any sort of claim.

Second, this argument does not refute the plausible allegations in the FAC that (i) there was an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law. FAC ¶¶ 168-76.

The FAC is not specific about the assets upon which the constructive trust should be imposed because that information is not available to Debtors at this time, and that information is not required to survive a motion to dismiss. At the pleading stage, if the plaintiff has not pleaded specific facts regarding the use and final destination of the allegedly improperly transferred funds, such an omission is not fatal to the proceeding as the factual record is subject to further development. *Seiden v. Kaneko*, No. CV 9861-VCN, 2015 WL 7289338, at *14 (Del. Ch. Nov. 3, 2015) (defendant's motion to dismiss was denied even though whether the proceeds were traceable was unknown). Therefore, the Motion should be denied as to this count, as well.

605424037

## <u>Conclusion</u>

For the reasons set forth herein, Debtors respectfully request that the Court deny Loot ABC's motion to dismiss.

Dated: June 30, 2022

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Mark I. Duedall*
Mark I. Duedall (No. 3346)
Brian C. Walsh (*Admitted pro hac vice*)
1201 W. Peachtree Street, NW, 14th Floor
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile:  (404) 572-6999
Email: mark.duedall@bclplaw.com
        Brian.walsh@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Andrew J. Schoulder (*Admitted pro hac vice*)
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-2000
Facsimile:  (212) 541-4630
Email: andrew.schoulder@bclplaw.com

-and-

**ROBINSON & COLE LLP**
Jamie L. Edmonson (No. 4247)
1201 North Market Street
Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile:  (302) 516-1699
Email: jedmonson@rc.com

*Co-Counsel to Plaintiffs*

11

605424037

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, I caused the ***BRIEF IN RESPONSE TO LOOT (ASSIGNMENT FOR THE BENEFIT OF CREDITORS), LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT*** to be electronically filed with the Court and served upon the parties that are registered to receive notice via the Court's CM/ECF notification system.

Dated: June 30, 2022

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Mark I. Duedall*
Mark I. Duedall (No. 3346)
1201 W. Peachtree Street, NW, 14th Floor
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile:  (404) 572-6999
Email: mark.duedall@bclplaw.com

*Co-Counsel to Plaintiffs*

605424037